A. O. ANDERSON, Appellee, v. EMMA LUNDT et al., Appellants.

GLENWOOD J. FITZGERALD et al., Appellants, v. A. O. ANDERSON et al., Appellees.

ATTORNEY AND CLIENT: Retainer and Authority — Essentials of
1 Employment. A contract of employment of an attorney is established on a showing that the advice and assistance of the attorney in a matter pertinent to his profession were solicited and received. (See Book of Anno., Vol. 1, Sec. 10920, Anno. 47 *et seq.*)

**FRAUDS, STATUTE OF:** Part Performance—Delivery of Deed as Part Performance. An oral contract between the owner of land and all the heirs, from whom he had obtained it by different deeds, to reconvey the land and thereby cancel the purchase-money mortgage, is taken out of the statute of frauds by the act of the owner in executing and delivering to the attorney for the heirs the deeds agreed on, and the acceptance by one of the heirs of the deed to him.

**CONTRACTS:** Consideration—Reconveyance of Land. A contract cannot rest on a past consideration, but has ample support in a consideration consisting of the doing of something of value which the promisor was under no legal duty to do. So held where the mortgagor of land, in order to escape obligation on the mortgage, contracted to *reconvey* the land and to *assume and pay* the attorney fees of the mortgagee. (See Book of Anno., Vol. 1, Sec. 9441, Anno. 27 *et seq.*)

**Headnote 1:** 6 C. J. p. 630. **Headnote 2:** 27 C. J. p. 332. **Headnote 3:** 13 C. J. pp. 320, 324, 359.

*Appeal from Clay District Court.*—F. C. DAVIDSON, Judge.

DECEMBER 15, 1925.

SUIT in equity to cancel a mortgage and to enforce specific performance of an oral contract to that effect. The defense was a general denial of the contract and a cross-petition to foreclose the mortgage. There was a decree for the plaintiff, ordering cancellation, and a dismissal of the cross-petition of the defendants. The defendants have appealed.—*Affirmed.*

*J. W. Cory & Son* and *Helsell & Helsell,* for appellants.

*Buck & Kirkpatrick* and *E. A. Morling,* for appellees.

EVANS, J.—The above title indicates the pendency of two actions. The second action is a foreclosure brought by the defendants in the first action against the plaintiff therein, seeking to foreclose their mortgage. This second action is the equivalent of a cross-petition in the first action, to foreclose the mortgage sought to be canceled by the plaintiff therein. By agree-

1. ATTORNEY AND CLIENT: retainer and authority: essentials of employment.

ment, both actions were consolidated, and the second action is treated as such cross-petition. The defendants were the holders of a mortgage of $25,250 against the plaintiff. This mortgage is the subject-matter of the controversy, and was canceled by the decree of the district court. In the discussion of the case, we shall confine ourselves wholly to the first case. One R. B. Anderson appears as intervener, joining, in effect, with the plaintiff. For the purpose of our discussion, we shall have no occasion to refer to him. In order to get an understanding of the nature of the controversy, a few antecedent facts may properly be stated. The land in controversy comprises the northwest quarter (NW¼) of Section two (2), and the south half of the northeast quarter (S½ of NE¼) of Section three (3), and the north half of the southeast quarter (N½ of SE¼), of said Section three (3), in a certain township. This formerly comprised the farm of Detlef Stark, now deceased. It comprises an acreage of 284 acres, some of the government subdivisions being fractional. This property passed by the will of Detlef Stark as follows: The south half of the northwest quarter (S½ of NW¼) of Section two (2) to his son Fred Stark. The remainder of the land was devised, one third each to Mrs. Lundt and Mrs. Bonser, daughters, and one third to the three children of a deceased daughter, Mrs. Fitzgerald. The defendants in this suit are the "heirs" of Detlef Stark and the devisees of his will, other than Fred Stark. They have been referred to in this record as the "heirs." For convenience, we shall so refer to them. On and prior to February 20, 1920, the plaintiff purchased that part of the farm devised to the "heirs." By a separate contract, he purchased also the 80 acres devised to Fred Stark. Upon this 80 were located the dwelling and the buildings appurtenant thereto. This 80 also included the outlet of the drainage system upon the farm. The conveyances to the plaintiff and the purchase-money mortgages by the plaintiff were executed on February 20, 1920. The purchase price agreed to be paid to the "heirs" was $51,750. Of this sum, $25,250 was represented by a mortgage. This mortgage was made subject to a first mortgage of $20,000 made by the plaintiff to the Federal Land Bank. The proceeds of such first mortgage were paid to the "heirs" as a part of the purchase price. The 80-

acre tract was conveyed to the plaintiff by Fred Stark, and the rest of the farm was conveyed both by the executor of the estate and by the "heirs," who are the defendants herein. Fred Stark received a cash payment of $2,000, and took back a mortgage for $18,000. In February and March, 1923, the plaintiff was in default in the payment of interest, and some negotiations were entered into between him and the "heirs" and Fred Stark, wherein foreclosure was threatened by these defendants and said Fred Stark. The general purport of these conferences was that the plaintiff declared his inability to meet his obligations, and the mortgagees were offering more or less concessions as an inducement to such performance. After one or more conferences, a final meeting was had on March 27, 1923, at the law office of Heald, Cook & Heald, at Spencer, wherein an agreement was apparently reached among all parties. This agreement was, in substance, as contended by plaintiff, that he should immediately convey the land back to his respective grantors; that he oust one Lakin from occupancy of the farm; that he lease the same to one Forest Crowl, and that he assign the lease; that he pay the interest on the first mortgage up to March 1, 1923, and likewise the interest on the Fred Stark mortgage and the second mortgage to the "heirs," up to March 1, 1923; that he pay all taxes due and all drainage tax due and payable prior to December 31, 1923; and that he pay the attorney fees incurred by the said "heirs" and said Fred Stark, and due to Heald, Cook & Heald. A memorandum in general terms was drawn up by Attorney Heald on that date, and was signed by the plaintiff. On April 6th following, a more specific statement was drawn up by Attorney Cook, of the same law firm, and signed by the plaintiff. Said memoranda, however, were not signed by any of the other parties. The defendants rely upon the defense of want of consideration; and upon the statute of frauds. The defense upon the facts is largely concentrated upon the contention that the law firm of Heald, Cook and Heald had no authority to represent or bind the defendants. and that such firm had not been employed by the defendants, and was not in fact acting for the defendants. The issue of fact here made is virtually determinative of this case. No evidence was offered, tending to show that this law firm was acting for the plaintiff. They were in-

strumental in bringing about the settlement which is now relied on by the plaintiff. If they were not acting for the defendants, then they must be deemed to have been mere intermeddlers, without authority to represent either side in the controversy. It is undisputed that this firm was first consulted by Lundt, the husband of one of the defendants, and by Fred Stark, who sought advice as to the collection of the delinquent interest and the possible foreclosure of the mortgages. This consultation was with Mr. Heald. This was sometime prior to March 27th. Either through the notification of Heald or by the request of some of the defendants, Anderson, who lived in the town of Peterson, was asked to meet the mortgagees in the office of Heald. This request he complied with. This was on March 27th. All the "heirs" came to Mr. Heald's office and were present at a conference with the plaintiff in which Heald acted as spokesman for the "heirs." The necessity of foreclosure was pressed upon the plaintiff as a reason why some satisfactory settlement should be made. They were all present when the memorandum was drawn up by Heald and signed by the plaintiff. They all heard it read, and assented to it as a satisfactory basis of settlement. The only evidence in the record upon which reliance seems to be placed as negativing the employment of Heald, was the testimony of each defendant that she did not employ him. It is made evident, however, that all of them understood that Mr. Heald had been employed by someone in their interest. They also understood that that was the reason for their presence in his office. They all knew, also, that he was assuming to speak and to conduct the settlement in their behalf. The fact that they did not in formal terms employ him is one of very little significance. Formality is not essential in the employment of an attorney. It is enough that his advice and assistance be sought and received in matters pertinent to his profession. Upon the record herein, we see no room to doubt the intentional employment of Heald as their counsel, by or on behalf of the defendants, and that such fact was fully understood and acted on by all of them. This fact is far-reaching in its effect upon the case.

The contract relied on, though partly represented by written memoranda signed by the plaintiff himself, must neverthe-

less be deemed an oral contract, so far as the rights of the de-

**2. FRAUDS, STATUTE OF: part performance: delivery of deed as part performance.** fendants are concerned. The plea of the statute of frauds was therefore available to the defendants, unless the plaintiff has shown an avoidance thereof. Closely related to this question, upon this record, is that of want of consideration. The argument for the defendants is that the plaintiff promised nothing in such settlement except that which he was already under legal obligation to do. So far as the payment of interest installments and taxes is concerned, this contention must be conceded. A promise to pay what he was already obligated to pay would not, in itself, have the support of a consideration. But the plaintiff

**3. CONTRACTS: consideration: reconveyance of land.** agreed to pay the attorneys' fees incurred by the defendants. He was under no previous obligation to do this. This promise, therefore, furnished a consideration. He promised to make an immediate conveyance of the farm. This he was under no previous obligation to do. Unless, therefore, these promises were barred by the statute of frauds, there can be no claim of want of consideration. The avoiding, if any, of the statute of frauds rests upon partial performance. On the day following this alleged settlement, the plaintiff paid a part of the attorney fees stipulated for. Likewise, he caused deeds of the farm to be executed: one to Fred Stark and the other to the other "heirs." These deeds were prepared by the defendants' attorneys, and were executed by plaintiff and delivered to the attorneys. Fred Stark promptly accepted his deed and canceled his mortgage. While it is true that the ownership by Fred Stark of his tract and the ownership of the other "heirs" of their tract were entirely distinct, and that their respective mortgages were distinct, yet the arrangement entered into with the plaintiff involved both mortgages and both tracts. The fact that the interests of the defendants and Fred Stark were separate was not an impediment to one joint contract. The plaintiff purported to enter into one contract, and one only, and this required him to convey both tracts. It cannot be said that he would have agreed to convey back the Fred Stark 80 in the absence of a like settlement with the other "heirs." The Fred Stark 80 was so related to the other tract as a part of the same farm that the

conveyance of it alone was a dismemberment of the farm. Inasmuch, therefore, as there was but one contract of settlement, including both tracts, the delivery of a deed to Fred Stark and the acceptance thereof by him became a partial performance of the agreement of March 27th.

It must be said, therefore, that neither the statute of frauds nor want of consideration is available as a defense. This leaves only the question of weight of evidence to be determined. Putting ourselves as near as we may to the point of view of the defendants on March 27th, we find this situation. The plaintiff declared his inability to pay; the defendants and their attorneys saw no means by which they could enforce payment, except to the extent of their security. While there is no direct evidence in the record as to the solvency or insolvency of the plaintiff, it does appear that the defendants believed him insolvent. He was, however, the president of a bank, and was drawing a substantial salary. The sums of money which he agreed to pay were to be paid in monthly installments, and his salary was his sole reliance for the performance of such installments. Heald advised his clients as to the advisability of getting an advantageous settlement, rather than a foreclosure. It was evident that a mere foreclosure would delay possession for at least one year, and possibly two crop seasons. The stipulation called for payments totaling more than $2,000, to be made in monthly installments out of plaintiff's salary. This was apparently more advantageous than a foreclosure. It also appears from the record that the real reason for the repudiation of the settlement by the defendants was their inability to come to an agreement between themselves as to the share that each would take in the land conveyed to them. It appears that, at the time of their sale of the land to the plaintiff and the receipt by them of a cash payment, this payment had not been distributed among the beneficiaries in the proportion of their interest, and that Mrs. Bonser specially had received the major part of her interest in the estate out of such cash payment. How to adjust this difference became the bone of contention between the parties themselves. It is contended by the defendants that they not only failed ever to assent to the settlement, but that they affirmatively repudiated it promptly. But this repudiation was never communicated to

the plaintiff. He continued performing his part of the settlement up to December following, before he learned of the repudiation. The foreclosure of the mortgage was begun by the defendants after the beginning of this suit by the plaintiff, and not before.

The record is too voluminous for us to pursue further details of the evidence. Suffice to say that, upon a careful reading of the whole record, we are firmly convinced that, on March 27th, the defendants all believed that they had made a settlement with the plaintiff, and no reason is shown for their later change of attitude, except the disagreement that arose between themselves.

Some complaint is made of the form of the deeds tendered, as not being representative of the real interest of the parties. The plaintiff executed the deed in the form in which it was prepared by the defendants' attorney. He has always declared his willingness to make any change in such form that may be desired by the defendants. The decree of the court has preserved that right to the defendants, and reserved from its operation all question of right as between the defendants themselves. There is nothing, therefore, in this feature of the case that calls for our interference.

The decree of the district court is, accordingly, affirmed.— *Affirmed.*

FAVILLE, C. J., and STEVENS and ALBERT, JJ., concur.

MORLING, J., not participating.