MARGARET DUGAN, Appellant, v. MIDWEST CAP COMPANY et al., Appellees.

No. 41118.

DECEMBER 17, 1931.

Chester J. Eller and Walter F. Maley, for appellant.

Parrish, Cohen, Guthrie & Watters, for appellees Midwest Cap Company, Wm. Friedman, and Samuel Maness.

A. Wallace, for appellee C. M. Young.

Milton W. Strickler, for appellees Mrs. J. Carey and Eulah Pittman.

GRIMM, J.—Many of the facts out of which this trouble arose may be found in Dugan v. Midwest Cap Co. (Iowa) 229 N. W. 847 (not officially reported).

The petition in the case at bar was filed in November, 1929, and the gist of it is that the defendants caused "the false arrest and malicious prosecution of the said Margaret Dugan (appellant) by filing or causing to be filed a charge or information of insanity confining said Dugan in the Polk County Jail for two days and two nights under said assumed charge of insanity."

There are several amendments to the petition and separate answers for the various defendants.

At the close of the plaintiff's testimony, the defendants moved for a directed verdict. The court sustained such motions for all the defendants except C. M. Young and Mrs. J. Carey. Thereupon, the plaintiff authorized the trial court to dismiss, with prejudice, as against Carey and Young, in the event that the appellant's appeal is decided adversely to her in this court. We have before us, therefore, only the motions of the defendants Midwest Cap Company, Wm. Friedman, Samuel Maness, and Eulah Pittman.

It appears that prior to January 30, 1928, the appellant had pending in the District Court of Polk County, Iowa, an action for damages against the Midwest Cap Company and other defendants, except Young. On January 30, 1928, this cause was dismissed because of the plaintiff's failure to appear for trial. About four o'clock in the afternoon of the same day, the defendant was arrested on an information filed by defendant C.

M. Young, who was then secretary of the Iowa Humane Society, who testified:

"I am frequently called on in insane cases by the Commission and frequently file the papers to bring the parties within the jurisdiction of the Commission."

It appears that the matter was first brought to his attention by one Strickler, an attorney, Des Moines, who had represented the defendants (Midwest Cap Company and its officers) in the civil action which, as previously stated, was dismissed.

The warrant was issued by the Clerk of the District Court of Polk County and served by the deputy sheriff. It appears that the information was filed in the afternoon of January 30, 1928. The information was sworn to by Young before the Clerk of the District Court, and the warrant came into the hands of the serving officer at four o'clock in the afternoon.

The hearing was had before the commission of insanity on February 2nd, and resulted in the discharge of the appellant.

I. While in one of the motions for a directed verdict a question is raised to the effect that damages such as are here sought may not be recovered for filing an information to bring about a test of the sanity of the plaintiff, the point is not properly raised or argued here, and we assume, for the purposes of this case, that the filing of such an information may, under proper allegation and proof, create a cause of action.

II. One of the principal questions raised has to do with whether the Midwest Cap Company, its officers and agents, actually participated in procuring the filing of the information. Without unduly extending the opinion by quoting from the testimony, we may say it quite satisfactorily appears that, if these parties participated at all in procuring the filing of the information which resulted in the arrest of the plaintiff, the same was done through an attorney named Strickler, who clearly appears to have been the attorney for the said parties in the damage suit brought by the plaintiff against said parties, on account of an alleged assault and battery of the plaintiff, which assault took place on or about the Midwest Cap Company's place of business, and which case, as previously stated, was dismissed.

It satisfactorily appears that this suit was dismissed because of the failure of the plaintiff to appear at the time the

cause was set down for hearing, on January 30, 1928. We infer from the record that this dismissal took place before Strickler appeared and presented his case to the defendant Young, who signed and filed the information in question. It will be recalled that Young was then secretary of the Iowa Humane Society, and he says:

"I am frequently called on in insane cases by the Commission and frequently file the papers to bring the parties within the jurisdiction of the Commission."

Whether this was at the request of or for the accommodation of the Commission does not appear. However, it is significant that Strickler went to Young, who, after considering the cause, as presented, signed and swore to the information and filed it. It does not appear that Young knew anything about the plaintiff or her alleged insanity or any of the facts upon which the insanity charge was based until Strickler appeared before him. There is a strong inference from the record that, as a matter of practice in the city of Des Moines, Young acted, at times, for the commission of insanity in matters of this kind. Just why or upon what terms does not appear.

It does not appear that the Midwest Cap Company officers personally urged Young to file the information.

Strickler is not a defendant. Moreover, as previously intimated, upon the record as made, we think that, unless it can be properly held that Strickler was acting, with authority, for and on behalf of the Midwest Cap Company and its officers in presenting the cause to Young, then the Midwest Cap Company and its officers did not participate in procuring the filing of the information and the consequent arrest of the plaintiff Dugan.

Various conversations are recited in the record by which it is attempted to prove that, prior to the dismissal of the civil action hereinbefore referred to, certain officers of the Midwest Cap Company declared that Strickler represented them and had authority. Strickler is claimed to have made statements to the effect that he represented the Midwest Cap Company and its officers in presenting these matters. It will be noted, however, that everything that was said by the officers of the Midwest Cap Company must be interpreted as having relation to Strickler's authority in defense of the civil action for assault and battery,

which was dismissed prior to the filing of the insanity information.

It is incumbent upon the plaintiff, in order to recover in this action, to show that the defendants instigated or procured the filing of the information and the consequent arrest. See Holden v. Merritt, 92 Iowa 707; McNamara v. Pabst, 112 Atl. 812 (Md.). Moreover, mere passive knowledge and consent to the acts of another are not sufficient to render a party liable. McNamara v. Pabst, 112 Atl. (Md.) 812, and cases cited.

May the activities of Strickler, as shown in the record in this case, be charged to the Midwest Cap Company and its officers? There is nothing in the record from which it can be properly inferred that Strickler was employed by the Midwest Cap Company or its officers to file the information or procure the arrest of the plaintiff Dugan. The mere fact that Strickler had been an attorney for the Cap Company and its officers, defending them in a civil action, is not sufficient when it appears that said suit had already terminated. As was said by this court in Scott v. Scott, 174 Iowa 740, l. c. 745:

"The employment of attorneys to prosecute suit always terminates with judgment or decree, unless something consequent thereof is to be done to render the judgment or decree or fruits thereof effective or available."

There is no showing that the dismissal of the damage suit for alleged assault and battery was not in and of itself conclusive, and a final determination of all issues tendered therein. Manifestly, Strickler had no authority to procure the filing of an insanity information against plaintiff Dugan simply because of the fact that he had defended the cap company and its officers in a damage suit which had terminated by a dismissal. Moreover, as was said by this court in Treadway v. Sioux City & St. Paul Railway Company, 40 Iowa 526:

"Admissions of an attorney, in order to bind his client, must be distinct and formal, and made for the express purpose of dispensing with formal proof of a fact at the trial. Those which occur in mere conversations, though they relate to the matters in issue in the case, cannot be received in evidence against the client. 1 Greenleaf's Ev. §186."

This being true in reference to matters then pending in court, clearly the same rule applies even with greater force where an attorney who has concluded the business for which he was retained, attempts to create an agency by his own words and conduct in relation to another matter entirely separate from the terminated litigation. In other words, after the civil action had been dismissed, Strickler could not bind those who were his clients in the civil action by any statements he may have made immediately before or at the hearing before the commission of insanity. The burden was upon the plaintiff to show the agency of Strickler in connection with the insanity proceedings, and the plaintiff has failed in this regard. There was no competent evidence on the subject in the record.

III. The plaintiff's case appears to be largely bottomed upon the proposition that, because the commission of insanity discharged the plaintiff Dugan, that, in and of itself, is sufficient evidence of want of probable cause. The plaintiff has cited some cases thought to be in point in support of that proposition. They will be later considered. As this court said in Philpot v. Lucas, 101 Iowa 478:

"Probable cause does not depend upon the guilt of the accused party in fact, but upon the honest and reasonable belief of the party commencing the prosecution. * * * As some of the authorities put it in such a case, the acquittal affords no evidence that such charge was preferred without probable cause. 14 Am. & Eng. Enc. Law, p. 65; Newell, Mal. Pros., p. 294; Griffin v. Chubb, 7 Tex. 603 (58 Am. Dec. 85); Heldt v. Webster, 60 Tex. 207; Williams v. Vanmeter, 8 Mo. 339; Griffis v. Sellars, 2 Dev. & B. 492 (31 Am. Dec. 422); Bitting v. Ten Eyck, 82 Ind. 421; Thompson v. Rubber Co., 56 Conn. 493 (16 Atl. Rep. 554); Boeger v. Langenberg (Mo. Sup.) 11 S. W. Rep. 223; Townshend, Sland & L., 709, and cases cited; 2 Greenleaf, Ev., section 455; Cooley, Torts (2d Ed.), pp. 214, 215. See, also, Stone v. Crocker, 24 Pick. 81."

In Barton v. Woodward, 182 Pac. 916 (Idaho), the court said:

"In a trial on the merits in a civil or criminal case, or in a lunacy proceeding, the question of probable cause is not passed on by the court, judge, or jury; nor is it the criterion of the de-

cision or verdict. The decision is on the merits and, if the defendant wins, it simply means that the plaintiff has not proved his case by the preponderance of the evidence or beyond a reasonable doubt. Therefore, the verdict or decision has no logical bearing on the question of probable cause and is not even admissible on that issue. It is admissible simply for the purpose of proving final and favorable termination of the action, which is another and separate question."

The appellant relies upon the following cases: Hidy v. Murray, 101 Iowa 65. In that case, a preliminary information was filed against the parties suing for damages, in which proceeding it was sought to bind the party over to the grand jury. The committing magistrate discharged the prisoner. Manifestly, the real issue in such a proceeding is whether there is probable cause for believing the defendant guilty. When such probable cause is found, the defendant is bound over. If not, the defendant is discharged. Thus it will be seen that, in such proceedings, the very question of probable cause is determined adversely to the defendant in the damage suit, at least to the point of making out a prima facie case for want of probable cause in the damage suit. This rule does not apply where, as in the case at bar, the trial was on the merits.

In Johnson v. Miller, 63 Iowa 529, the only ruling by this court is to the effect that, on the trial of a criminal prosecution, evidence of a disagreement of the jury in a former trial is admissible on behalf of the defendant, as evidence of probable cause. Lint v. Lint, 158 Iowa 444, and Flackler v. Novak, 94 Iowa 634, will, upon examination, be found not to be in point.

 IV. There is an attempt on the part of the plaintiff to show malice on the part of the Midwest Cap Company and its officers, but, as we have seen, the plaintiff failed to show that said parties did anything or said anything except in connection with the damage suit, which was dismissed before the proceeding at bar was commenced. Moreover, as was said in Krehbiel v. Henkle, 178 Iowa 770, l. c. 780:

"It is true that malice may be inferred from a total want of probable cause, but a want of probable cause cannot be inferred from malice, however great."

All other questions raised by the appellant have been fully considered and found to be without merit.

Upon the record made in this case, there was not. sufficient evidence to warrant the court in submitting any issue to the jury.

The ruling for a directed verdict for the defendants was correct, and it follows the cause must be, and is, affirmed.

FAVILLE, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.