RALPH ORWIG, Appellee, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

No. 41861.

SEPTEMBER 26, 1933.

REHEARING DENIED JANUARY 12, 1934.

R. L. Read and A. B. Howland, for appellant.

Oscar Strauss and Walter L. Stewart, for appellee.

CLAUSSEN, J.—Automatic train control devices were installed on defendant's lines and engines by the Regan Safety Devices Company, Inc., under a contract by which the Regan Safety Devices Company, Inc., agreed, among other things, to assume the defense of suits brought against the defendant for infringement of patents by the installation and use of such devices. Two suits were brought against the defendant for alleged infringement of patents through the use of such devices. It appears that demand was made upon the Regan Safety Devices Company, Inc., that it assume the defense of such suits, and that pursuant to such demand the defense of the suits was assumed by it. The offices of the Regan Safety Devices Company, Inc., as well as the offices of general counsel for defendant, were in New York City. It is evident that Mr. Regan, of the Regan Safety Devices Company, Inc., asked Mr. Bell, general counsel for defendant, to refer him to competent counsel in Iowa, for on October 23, 1929, Mr. Bell wrote Mr. Gamble, attorney for defendant in Iowa, as follows:

"Mr. Regan, President of Regan Safety Devices Company, has asked me to refer him to a lawyer in Des Moines, or in Iowa, who is competent to represent the Regan Company in the defense of the above cases which defense the Regan Company will assume. He should have a lawyer who is familiar with patent litigation and at the same time is thoroughly versed in local conditions. Naturally, Mr. Regan wishes the expense to be kept as low as possible.

"Mr. James, of Cavanagh & James, is Mr. Regan's regular patent counsel, but will not be able to handle these cases as he is engaged in other matters. He has, however, given Mr. Regan a letter setting forth some preliminary views as to these two cases, and, with Mr. Regan's permission, I am sending a copy of this letter to you."

On October 28, Mr. Gamble wrote Mr. Bell as follows:

"I have your letter of October 23rd relating to the above entitled cases.

"There are two patent lawyers in Des Moines, either of whom is, I think, quite capable. One is Mr. W. P. Bair, of Bair, Freeman & Sinclair, 803 Equitable Building, and the other is Mr. Ralph Orwig, of Orwig & Hague, 608 Crocker Building. We have in the past employed Mr. Orwig on several occasions.

"I have not mentioned these cases to either of these gentlemen, but will do so if either you or Mr. Regan desires. Please advise me your wishes in the premises.

"It seems to me that the suggestion made by Mr. James as to the filing of preliminary motion in these cases is sound, and should be followed."

On November 1, Mr. Bell replied as follows:

"Thank you for your letter of the 28th.

"Mr. Regan suggests that he would like to retain Mr. Orwig, and authorizes me to ask you to retain Mr. Orwig on his behalf.

"Will you please interview him, and ask him to communicate with Mr. Regan on the subject?"

On November 4, Mr. Gamble wrote Mr. Bell as follows:

"I have your letter of November 1st relating to the above cases.

"I have today interviewed Mr. Orwig, and have turned over our files for his perusal, and have requested him to get into communication with Mr. Regan. He said he would make a report to me after he had read the files."

Mr. Gamble testified that his first interview with plaintiff was on November 4th, the date of the above-quoted letter; that he then gave plaintiff the letter first above set forth as well as a copy of the letter from the patent lawyers therein referred to; that he told plaintiff that the Regan Safety Devices Company, Inc., had assumed the defense of the suits; that he (Gamble) had been asked to recommend an attorney and that he had recommended plaintiff; and that he told plaintiff to communicate with the Regan Safety Devices Company, Inc., and make his own arrangements with them.

Plaintiff testifies that early in November he had a conversation with Mr. Gamble in which Mr. Gamble told him of the suits and that he (Gamble) wanted plaintiff to take care of the suits. Plaintiff states that in this first conversation nothing was said of the connection of the Regan Safety Devices Company, Inc., with the defense of these suits, but that this was first mentioned in a subsequent

conversation. It is certain that plaintiff had in his possession the letter first above quoted not later than November 16th, for on that day he wrote the Regan Company a letter in which he refers to the letter of the New York patent- attorneys, a copy of which accompanied the letter first above quoted, and commented in general terms on the situation and in which he used this language:

"If you wish me to attend to these matters for you, you may send me a retainer of $300.00, which will cover the preliminary investigation and this report to you to date. My usual per diem charge is $50.00 when in the office and $75.00 and expenses when out of the city or in court."

On November 18th Mr. Regan telegraphed plaintiff to proceed in the matter.

It will be observed that the material dispute in the testimony of these witnesses relates to the time when plaintiff was first advised of the connection of the Regan Company with the litigation, and of the fact that it had assumed the defense of the infringement suits. The undisputed fact is that not later than November 16th plaintiff had in his possession the letter of defendant's general counsel, dated October 23, stating that the Regan Company had assumed the defense of the infringement suits and had requested that it be referred to competent counsel in Iowa.

After some preliminary motions had been made, it appears that the original suits were dismissed and new suits started. The actions were successfully defended by plaintiff. In the meantime the Regan Safety Devices Company, Inc., encountered difficulties and plaintiff was not paid for his services other than a retainer fee of $300.00.

This action is brought to recover the value of such services and is based on a specific contract of employment. The case was tried to a jury, which returned a verdict for plaintiff. A motion for a new trial was overruled, and defendant appeals.

I. The court submitted the question of the employment of plaintiff by the defendant on two theories: First, on the theory that plaintiff's employment was within the scope of Mr. Gamble's apparent power; and, second, that such employment had been ratified by defendant. The first question that arises under the record is whether there was sufficient evidence to warrant the submission of the case to the jury on either theory. It is certain, in view of the

correspondence between Mr. Gamble and defendant's general counsel, that Mr. Gamble had no actual authority to employ plaintiff in behalf of defendant. Preliminary to the discussion of the question whether the employment was within the scope of Mr. Gamble's apparent power, we will set forth every fact disclosed by the record bearing on that question. Mr. Gamble was attorney for defendant in Iowa. He had charge of litigation and legal matters in which the defendant was interested in Iowa, under the direction of the solicitor general and general counsel for defendant. He was employed on a salary basis. He was required to give counsel to the officers of the company, in relation to the company's business in the state. He had nothing to do with legal matters or business of the company outside of Iowa unless specially directed. On one other occasion, pursuant to specific authorization from the solicitor general, Mr. Gamble had employed plaintiff for defendant in a suit involving patent matters.

It is the general rule that an attorney may not, by reason of his employment as counsel, engage another attorney at the expense of his client. Gillilland v. Brantner, 145 Iowa 275, 121 N. W. 1047; Antrobus v. Sherman, 65 Iowa 230, 21 N. W. 579, 54 Am. Rep. 7; 6 C. J. 668, section 181.

There are no facts disclosed by the record from which the jury could find that Mr. Gamble either had or apparently had greater authority in respect to the employment of counsel than is possessed by attorneys generally. So far as the defendant is concerned, the record is entirely silent concerning any grant, or recognition of power on the part of Mr. Gamble to employ counsel for it. He is not revealed as being in any sense an officer of the defendant. The record indicates only that he was an attorney employed on a salary basis to take care of litigation and legal matters in Iowa, subject to the direction of defendant's solicitor general and general counsel. He was in no sense general counsel for defendant. Expressed in homely terms, he was just defendant's lawyer. In this situation the cases relied upon by plaintiff in relation to the authority of general counsel to employ counsel are not in point. Northern Pac. R. Co. v. Clarke (C. C. A.), 106 F. 794; Cross v. Atchison, T. & S. F. Ry. Co., 141 Mo. 132, 42 S. W. 675. Neither does Fowler v. Iowa Land Co., 18 S. D. 131, 99 N. W. 1095, sustain the action of the trial court, for in that case the employment of the attorney was sustained because made by one who was

both agent and general counsel. We reach the conclusion that there was not sufficient evidence to warrant the submission of the case to the jury upon the theory that the employment of plaintiff was within the scope of Mr. Gamble's apparent power.

There is no evidence of any kind or character from which it could be found that defendant ratified the employment of plaintiff by Mr. Gamble. There is no evidence that any officer of defendant knew that plaintiff even claimed to be in the employ of the defendant, let alone that he claimed to have been employed in behalf of defendant by Mr. Gamble. The fact that plaintiff appeared in the patent suits would not put the defendant on inquiry in view of the assumption of the defense of such suits by the Regan Safety Devices Company, Inc., and the letters passing between general counsel and Mr. Gamble. It is of course obvious that if Mr. Gamble had power to employ plaintiff, there would be no occasion for a ratification of the employment, and that if Mr. Gamble did not have power to employ him, ratification cannot be based on what Mr. Gamble knew or did, for Mr. Gamble could not ratify an act beyond his power of performance. Hartman Steel Co. v. Hoag & Son, 104 Iowa 269, 73 N. W. 611; 6 C. J. 669, section 182.

Only for the purpose of showing that the evidence has not been overlooked we notice a letter written by Mr. Gamble to Mr. Bell in which Mr. Gamble says:

"The case of Gerlach v. The Rock Island will come on for trial in the Federal Court here on Monday, January 5th.

"Mr. Orwig who was retained by the Regan Company in this case is in my office now. He tells me that the Regan people have paid him nothing since they paid him his retainer, although he has devoted to my own knowledge a lot of time and thought to the preparation of the defense of this case. He feels quite confident of the outcome of the case, but also feels that he should have payment for his services, and in view of the fact that the Regan people have not answered his letters in this respect, I wish you would get hold of them by telephone or otherwise as effectively as you can and see that they remit to Mr. Orwig before he goes into this trial. They are in no position, nor are we, to have him withdraw from the case at this time because of the nonpayment of fees, or failure to answer his letters.

"I have told Mr. Orwig that the Rock Island would stand the expense of the preparation of models to the amount of $300.00 if

the Regan people would not pay the same; and I have told·him that we would stand the expense of the man who made the models as an expert witness to the extent of. $20.00 a day while in Court if Regan would not pay the same.

"I would personally appreciate it if you will get after Regan as vigorously as you can and let me know what results you are able to accomplish."

In view of the fact that the letter was written by·Mr. Gamble, the letter cannot amount to a ratification of plaintiff's employment. So far as the record discloses, Mr. Bell did nothing in relation to plaintiff's connection with the case upon receipt of the letter. There is nothing in the record to indicate that Mr. Bell had any knowledge that plaintiff claimed to have been employed in behalf of defendant. There is no suggestion in the evidence that Mr. Bell knew or believed that plaintiff had any connection with the case except through employment by the Regan Safety Devices Company, Inc., upon its assumption of the defense of the infringement suits. For a certainty some knowledge or action in relation to a contract is essential to its ratification. 2 C. J. 476, section 93, et seq.

Plaintiff desired certain models for use in the trial of the case. The Regan Safety Devices. Company, Inc., failed to authorize their procurement. Defendant's general counsel authorized their manufacture and agreed to pay the witness fees of the party manufacturing the models. Such items were paid by the defendant. Ratification of plaintiff's employment cannot be based on these facts, for there is no suggestion in the record that defendant's officers then knew anything of plaintiff's claim of employment by defendant as counsel for it.

II. It is very strenuously urged by appellant that plaintiff was employed by the Regan Safety Devices Company, Inc., and that he was not employed by the defendant. The conflict between the testimony of Mr. Gamble and plaintiff in relation to their early conversations has been noted. It is, of.course, obvious that plaintiff could be employed by both the defendant and the Regan Safety Devices Company, Inc. The fact that plaintiff was retained by the Regan Safety Devices Company, Inc., by its telegram under date of November 18, does not negative a contract of employment between plaintiff and defendant on an earlier date. This is the only aspect in which this matter is presented by the record..

III. The first suits brought against defendant for the al-

leged infringement of patents were dismissed and new suits were immediately filed involving the same matters. It is urged that plaintiff's employment ceased upon the dismissal of the first suits. It is undoubtedly true that the employment of an attorney ceases upon the termination of the suit for the defense of which he has been retained. Hopkins v. Mallard, 1 G. Greene, 117; Dugan v. Midwest Cap Co., 213 Iowa 751, 239 N. W. 697; Scott vs. Scott, 174 Iowa 740, 156 N. W. 834; Owen v. Smith, 155 Iowa 463, 136 N. W. 119. But the thought quite naturally comes to mind that a defendant who stands by and lets an attorney, whom he has retained to defend a suit which is dismissed, defend the same cause of action in a suit commenced immediately following the dismissal of the original suit, cannot with good grace say that there was no employment after the dismissal of the first suit. The record in this case is conclusive that Mr. Gamble did not have the power to employ plaintiff. It is certain that plaintiff knew that Mr. Gamble had no power to employ him long before the first suits were dismissed. When the second suits were brought, plaintiff knew that the Regan Safety Devices Company, Inc., had assumed the defense of the suits. When the second suits were brought, he had a contract of employment with the company that had assumed the defense of the litigation. In this situation plaintiff could not assume that his employment by Mr. Gamble covered the second suits, because he then knew of the actual limitations on Mr. Gamble's power. He then knew that Mr. Gamble did not even have power to hire him in the first suits. In this situation it is impossible to imply a contract of employment covering services in the second suits. Whatever plaintiff's rights may have been to compensation for services rendered in connection with the first suits, it is certain that under the record he had no claim against defendant for services in connection with the second suits.

IV. As has been noted, the Regan Safety Devices Company, Inc., became involved in difficulties of some kind, and other than a retainer fee of $300, plaintiff was not paid for his work. Defendant requested an instruction to the effect that plaintiff must recover, if at all, under a contract of employment with defendant, and was not entitled to recover of defendant solely by reason of the fact that he had not been paid by the Regan Safety Devices Company, Inc. The requested instruction contained a correct statement of the law. The failure of the Regan Safety Devices Company, Inc.,

to pay plaintiff was given considerable notice in argument to the jury. The propriety of giving cautionary instructions is a matter resting largely in the discretion of the trial court. Healey v. Citizens Gas & Electric Co., 199 Iowa 82, 201 N. W. 118, 38 A. L. R. 1226; Siesseger v. Puth, 211 Iowa 775, 234 N. W. 540. The instruction might well have been given, and still the refusal of the trial court to give it would not be grounds for reversal.

The foregoing discussion disposes of all assigned errors requiring consideration.

The judgment of the trial court is reversed.—Reversed.

ALBERT, C. J., and EVANS, KINDIG, and DONEGAN, JJ., concur.