**FUCHS et al. v. ARONOFF.**

No. 348.

Municipal Court of Appeals for the District of Columbia.

April 26, 1946.

James R. Kirkland, of Washington, D. C. (Francis C. Brooke, of Washington, D. C., on the brief), for appellants.

H. Mason Welch, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This was a suit for attorney's fees based upon plaintiff's representation of defendants in connection with the purchase of a liquor business, the obtaining of a Class "A" retailer's liquor license, and other related services. Defendants filed an answer admitting the employment of plaintiff and the completion of the services for which he was engaged but claiming the fee charged was excessive. The case was tried to a jury and resulted in a verdict and judgment for plaintiff for $1,500.

Defendants have appealed and assign four errors by the trial court: (1) The sustaining of an objection to a hypothetical question asked of a witness for defendants; (2) the denial of defendants' motions for a directed verdict and for judgment notwithstanding the verdict; and (3) and (4) the refusal of the trial court to grant two prayers for jury instructions. The second and fourth errors assigned, being founded upon essentially the same grounds, will be discussed together. ·

I.

The rejected hypothetical question must be placed in its proper setting. Thomas E. Lodge, former chairman of the Alcoholic Beverage Control Board, produced as a witness for defendants, testified that it was the policy of the ABC Board to inquire into OPA violations charged against persons applying for the issuance or transfer of liquor licenses. He also testified that he was familiar in a general way with charges made by lawyers in the District of Columbia for legal services before the ABC Board, and that such charges necessarily depended upon the facts in each particular case. The statement of evidence on appeal then continues:

"He was then asked the question that, assuming an applicant for a Class 'A' liquor license otherwise had a good record, what additional service, if any, would be necessary by reason of the fact that there was civil litigation pending against the applicant for violation of OPA ceiling prices in connection with a grocery business and not involving the sale of liquor."

The trial judge sustained an objection to this question. However, he offered counsel for defendants several opportunities to reframe the question, but these offers were not accepted. It is the sustaining of this objection that is assigned as the first error.

The scope and limitations of hypothetical questions must depend largely upon the circumstances of each case, and in a very great degree, should be left to the discretion of the trial judge.[1]

As framed, the question was faulty. It treated all violations of OPA regulations as being of equal seriousness, so far as the granting of liquor licenses was concerned. It assumed the services rendered in any one instance where an OPA violation was involved would be the standard of services in every other case. Clearly, this could not be so. Evidence had been introduced that this particular violation was serious, and that because of it the ABC Board had grave doubts whether the license should be granted. These facts were ignored in the hypothetical question.

---

[1] Horton v. United States, 15 App.D. C. 310, 324; Sullivan v. Brabazon, 264 Mass. 276, 162 N.E. 312; 2 Wigmore, Evidence, 3d Ed.1940, § 682.

"Questions of this nature must be fairly framed with reference to the facts that have been offered and relied on in the evidence, and the hypothesis must be clearly and distinctly presented, so that there may be no misunderstanding by the witness and no confusion in the minds of the jury. Beyond this it would seem impracticable to frame a general rule applicable alike to all cases."[2]

We conclude that the trial judge, in sustaining the objection, did not abuse his discretion.

## II.

The second error assigned is the trial judge's denial of a motion for a directed verdict on the ground of plaintiff's alleged misrepresentations as a witness and the denial of a motion for judgment notwithstanding the verdict upon the same ground. The fourth error assigned was the refusal of the trial judge to grant defendants' prayer for instruction No. 7.

Both of these assignments of error are based upon the following circumstances: Plaintiff, on cross-examination, testified that the instant case was the first time he had sued a client, either for a fee or otherwise. After an adjournment, he was questioned regarding four designated Municipal Court suits, in each of which his name appeared as plaintiff. Two of these suits had been filed in 1932 and two in 1937. Plaintiff admitted that he was the plaintiff in these four suits. Upon redirect examination, he testified that the suits were so old and for such small amounts that he had forgotten about them; and that this was the first time he had gone to trial on such a suit. (The statement of proceedings and evidence does not specifically disclose that these four suits were for legal fees against former clients of plaintiff; this point, however, seems to be conceded.)

The trial court thereafter overruled defendants' motions for a directed verdict and for a judgment notwithstanding the verdict, and denied prayer for instruction No. 7, reading as follows:

"The jury is instructed that if it believes that plaintiff testified falsely in making his statement that he had never sued a client before for a fee, then the plaintiff has been guilty of fraud and is entitled to no fee whatever, and the jury shall return a verdict for defendants."

The entire charge was reported stenographically and is included in the record on appeal. The jury was told that in judging the credibility of a witness the jury should have in mind the law that a witness is presumed to speak the truth; that this presumption, however, may be overcome by contradictory evidence, by the manner in which the witness testified, by the character of his testimony or by evidence pertaining to his motives, or by all of these factors combined. The trial judge further charged the jury that if they believed any witness had willfully testified falsely as to any material matter, they were at liberty to disregard all or any part of that testimony of that witness. He then told the jury that the instructions just given applied to all witnesses, including plaintiff and defendant.

Defendants urged upon the trial court and now urge here the proposition that plaintiff in testifying falsely in the particular mentioned perpetrated a fraud both upon his client and upon the court, that he thus sought to secure his personal advantage to the prejudice of his client and in consequence was not entitled to any compensation for his services. In support of this position appellants rely upon cases holding that an attorney guilty of fraud and bad faith toward his client is not entitled to any compensation.[3]

We agree that the law makes it the duty of an attorney to exercise in all his relations to his client the most scrupulous good faith and fidelity and that he is bound to exercise the highest degree of honor, integrity and fidelity in his client's interests.[4] We do not agree, however, that this principle has the application contended for by defendants. We believe rather that the trial judge correctly ruled that the

[2] Horton v. United States, supra; see also Forsyth v. Doolittle, 120 U.S. 73, 7 S.Ct. 408, 30 L.Ed. 586; Napier v. Greenzweig, 2 Cir., 256 F. 196, 203; Capitol Traction Co. v. McKeon, 132 Md. 79, 103 A. 314; 2 Jones, Evidence, 4th Ed. 1938, § 371.

[3] Donaldson v. Eaton & Estes, 136 Iowa 650, 114 N.W. 19, 14 L.R.A.,N.S., 1168, 125 Am.St.Rep. 275; In re Skoll (Swedish-American Nat. Bank v. Davis), 78 Minn. 408, 80 N.W. 953, 81 N.W. 210, 79 Am.St.Rep. 400; Ingersoll v. Coal Creek Coal Co., 117 Tenn. 263, 98 S.W. 178, 9 L.R.A.,N.S., 282, 119 Am.St.Rep. 1003, 10 Ann.Cas. 829.

[4] Commonwealth Finance Corporation v. McHarg, 2 Cir., 282 F. 560.

question was one for the consideration of the jury in the application of the maxim falsus in uno, falsus in omnibus.

■ At the time of the trial, plaintiff had completed the services for which he was employed to the full satisfaction of defendants. In response to a request from one of the defendants, plaintiff had delivered to him all of the papers in the transaction and had submitted his bill. The bill not being paid, he brought this suit. The relationship of attorney and client, and the rights, powers, and obligations resulting therefrom, ordinarily continue until there has been a complete and final accomplishment, fulfillment, or end of the particular object, suit, or business upon which the attorney has been employed and thereupon the relationship or employment terminates and comes to an end.[5] Such relationship between plaintiff and defendants, therefore, had been terminated prior to the trial.

■ The fundamental error in defendants' position, however, is that they presumed and sought to require the trial court to conclusively presume that plaintiff's statement to the court and jury was not only false but knowingly false and made with intent to deceive. There is no such presumption. It is a fact to be determined by the jury.

■ Fraud consists of a knowingly false material representation or one made positively, in reckless disregard of truth, intended to be acted on by a party who does so to his injury.[6] The mere falsity of a statement does not warrant an imputation of willful perjury, where it might reasonably have been the result of a mistake,[7] and even where falsus in uno, falsus in omnibus has been applied strictly, it has been based upon a finding that the testimony of the witness was willfully false.[8]

■ We conclude that the motions and requested instruction presumed too much

and that the trial judge properly left to the jury the weight to be given to plaintiff's entire testimony in the light of his incorrect statement that he had not previously sued clients for fees.

### III.

■ The third error assigned relates to the trial court's failure to give defendants' prayer No. 4, reading as follows:

"The jury is instructed that it is the province of the jury to weigh the testimony of the attorneys as to the value of the services alleged to have been rendered, by reference to their nature, the time occupied in their performance, and other attending circumstances, and by applying to it *the jury's own experience and knowledge of the character of such services.*" (Emphasis supplied.)

The rejected prayer is open to the construction that the jury was entitled to take into consideration any special and private knowledge of legal services any individual juror might have. This is not the law today. As has been stated by Wigmore:[9]

"To allow the juror to contribute his *private knowledge* to the other jurymen would be to allow testimony to go to them unsubjected to the searching analysis of cross-examination. * * * The rule is now universally accepted, in statute and precedent; though its phrasings differ in minor details."

The principal case cited by defendants in support of their position, Head v. Hargrave, 105 U.S. 45, 49, 26 L.Ed. 1028, makes clear the distinction between the use of private and general knowledge by jurors. In that case the Supreme Court said:

"While they (the jurors) cannot act in any case upon particular facts material to its disposition resting in their private knowledge, but should be governed by the evidence adduced, they may, and to act intelligently they must, judge of the weight

---

[5] Morgan v. Krook, 36 Ariz. 133, 283 P. 287; Dugan v. Midwest Cap Co., 213 Iowa 751, 239 N.W. 697; Orwig v. Chicago, R. I. & P. R. Co., 217 Iowa 521, 250 N.W. 148, 90 A.L.R. 258; Sandall v. Sandall, 57 Utah 150, 193 P. 1093, 15 A.L.R. 620; see also 7 C.J.S., Attorney and Client, § 108.

[6] Merchants' Bank v. Hanna, 8 Cir., 73 F.2d 818; C. W. Denning & Co. v. Suncrest Lumber Co., 4 Cir., 51 F.2d 945; Bell v. Morley, 9 Cir., 223 F. 628.

[7] Nagle v. Dong Ming, 9 Cir., 26 F.2d 438.

[8] Alexander v. Blackman, 26 App.D.C. 541; see also Cvitkovic v. United States, 9 Cir., 41 F.2d 682, 684, certiorari denied 282 U.S. 871, 51 S.Ct. 77, 75 L.Ed. 770; Boyd v. Gorman, 29 App.Div. 428, 51 N.Y.S. 1083; 3 Wigmore, Evidence, 3d Ed. 1940, §§ 1013, 1014.

[9] 6 Wigmore, Evidence, 3d Ed.1940, § 1800.

and force of that evidence by their own general knowledge of the subject of inquiry."

The omission of the word "general" from defendants' proffered instruction was sufficient to justify its rejection by the trial court.

Furthermore, the trial court, although refusing to grant this prayer, did give instructions on the weight to be given to expert testimony. He told the jury to consider the testimony of expert witnesses along with all the evidence taken together, and that they were not bound by the expert testimony unless, in their judgment, they found from all the evidence that such opinions were correct. The instruction given, except for immaterial verbal changes was the same as that quoted by the Supreme Court in Head v. Hargrave, supra, and which that court stated "correctly presented the law of the case."

We conclude that the instruction given by the trial court clearly and correctly stated the law with respect to the weight to be given by the jury to expert testimony.

Affirmed.