Tom STEINBACH, Joann Steinbach,
and Model Enterprises, Inc., A
Corporation, Plaintiffs-Appellants,

v.

Virgil MEYER and Meyer Law Firm,
Defendants-Appellees.

86–962.

Court of Appeals of Iowa.

June 24, 1987.

Alfredo G. Parrish of Parrish & Kruidenier, Des Moines, for plaintiffs-appellants.

Randy Duncan of Duncan, Jones, Riley & Finley, Des Moines, for defendants-appellees.

Heard by OXBERGER, C.J., and DONIELSON and SNELL, JJ., but considered en banc.

SNELL, Judge.

Plaintiffs appeal from a summary judgment for defendants in a tort action based on breaches of duty arising out of a legal relationship. Plaintiffs contend that the trial court erred in granting summary judgment because genuine issues of material fact existed both as to the existence of an attorney-client relationship and whether defendant's conduct constituted negligence or malpractice.

The Meyer Law Firm performed various types of legal work for plaintiffs farmers between 1974 and 1983 and, also, represented the National Bank and Trust of Chariton on various matters. Virgil Meyer, a member of the firm, was on the bank's board of directors. Virgil drafted the incorporation papers for plaintiffs' business, Model Enterprises, Inc., in 1974 and also drafted papers concerning the bank and a slaughterhouse for the plaintiffs. On August 5, 1983, plaintiffs went to the firm for the purpose of preparing a cattle feeding contract necessary to the implementation of a debt restructuring agreement they had made with the bank. On August 18, plaintiffs picked up the contract. On August 20, Virgil Meyer, as director for the bank, voted with the other directors to terminate plaintiffs' line of credit and pursue foreclosure. Subsequently this action was commenced against

Virgil and the Meyer firm alleging breaches of duty arising cut a legal relationship.

Our scope of review is for the correction of errors at law. Iowa R.App.P.4. In reviewing the granting of a motion for summary judgment, we view the underlying facts contained in the pleadings and inferences to be drawn therefrom in a light most favorable to the party opposing the motion, and we give to such party the benefit of any doubt as to the propriety of granting summary judgment. *D.R.R. v. English Enterprises, CATV, Division of Gator Transportation, Inc.*, 356 N.W.2d 580, 582 (Iowa App.1984). Our task is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Id.* We will reverse the granting of summary judgment if it appears from the record that there is an unresolved issue of material fact. *Id.*

On a motion for summary judgment the moving party has the burden to show the absence of a fact issue. *Tasco, Inc. v. Winkel*, 281 N.W.2d 280, 282 (Iowa 1979). "Even if the facts are undisputed, summary judgment is not appropriate if reasonable minds may draw different inferences from them." *Id.* We have also recognized that a motion for summary judgment is functionally akin to a motion for directed verdict, which should not be granted if reasonable minds can differ on how the issue should be resolved. *Schermer v. Muller*, 380 N.W.2d 684, 687 (Iowa 1986). Thus, a jury question is engendered even where the facts are not in dispute or contradicted, and an evaluative judgment should not be engaged in summary judgment where the trier of fact may draw two possible conclusions from the facts. *Id., see also Chenette v. Trustees of Iowa College*, 431 F.2d 49, 53 (8th Cir.1970).

In applying these well-settled principles of law, we first examine the plaintiffs' argument that there is a genuine issue of material fact as to the existence of an attorney-client relationship. It is well-settled that a lawyer has a duty to his client to exercise ordinary care in handling the client's work. *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977). The lawyer must use the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession. *Id.* For such a duty to arise, it is necessary that an attorney-client relationship exist. *Id.*

While an attorney-client relationship is ordinarily created by contract, it is not necessary that the contract be express, or that a retainer be paid; a contract may be implied from the conduct of the parties. *Kurtenbach*, 260 N.W.2d at 53. These elements must be established before an attorney-client relationship may be established: (1) a person has sought advice or assistance from an attorney; (2) the advice or assistance sought pertains to matters within the attorney's professional competence; and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. *Id., Anderson v. Lundt*, 200 Iowa 1265, 1269, 206 N.W. 657, 658–59 (1925). In a legal malpractice action, however, it is not sufficient to merely prove that an attorney-client relationship existed. "It is necessary to establish that the relationship existed with respect to the act or omission upon which the malpractice claim is based." *Kurtenbach*, 260 N.W.2d at 56.

While a lawyer, in a fiduciary role, has a great responsibility to represent and protect his client's interest with respect to the subject matter of the employment, such duty does not extend beyond reasonable bounds. *Kurtenbach*, 260 N.W.2d at 57. It is also generally recognized that the employment of one member of a firm is deemed to be the employment of the entire firm. 7 Am.Jur.2d *Attorneys at Law* § 118, at 188 (1980). Several Iowa cases suggest that a lawyer's employment ceases upon completion of the purpose for which the lawyer was hired. *Orwig v. Chicago, R.I. & P. Ry. Co.*, 217 Iowa 521, 528, 250 N.W. 148, 151 (1933); *Dugan v. Midwest Cap. Co.*, 213 Iowa 751, 755, 239 N.W. 697, 699 (1931).

The correctness of the district court's granting of summary judgment to the defendants in this case does not depend upon a finding that disputed facts are present or that a jury may draw different inferences from those facts. It turns on whether a

cause of action emerges from the evidence. None does.

■ Plaintiffs claim that a jury as finder of fact could reasonably infer that the bank's board of directors was influenced by Virgil Meyer's knowledge of the Steinbachs' debt restructuring plan. But to do so would be based on speculation only since no testimony or evidence is shown to support it. Plaintiff, Tom Steinbach, admitted he had no proof at all that Virgil Meyer ever gave the bank any confidential information about Tom Steinbach, his wife, or his family's financial condition.

Plaintiffs knew that Virgil Meyer was a member of the bank's board of directors. They also knew the Meyer Law Firm represented the bank. At no time, however, did the law firm represent the bank against the plaintiffs or represent the plaintiffs in any dealings with the bank. The law firm declined to represent the bank in its foreclosure proceedings against the plaintiffs.

The Meyer Law Firm had done ad hoc legal work for plaintiffs over the years. It had never been on retainer for any plaintiff. Jim Meyer, a partner in Meyer Law Firm, was hired by plaintiffs to redraft a cattle feeding agreement. For this legal drafting work, he charged $75.00. He was not asked to represent plaintiffs nor did he do so in any negotiation with the bank on restructuring debt or any other matter. Neither was Virgil Meyer or the law firm asked to undertake any representation of plaintiffs on any problem they had with the bank. The redrafted agreement was completed by Jim Meyer and given to plaintiffs before the bank's board of directors voted. The legal work having been finished, no further duty of representation remained.

For a lawyer to have a duty to his client, an attorney-client relationship must exist. This is the threshold requirement for a legal malpractice action. *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977); *Ronnigen v. Hertogs*, 294 Minn. 7, 199 N.W.2d 420 (1972). Regarding plaintiffs' line of credit at the bank, defendants had no attorney-client relationship. In *Kurtenbach*, 260 N.W.2d at 57, our supreme court quoted with approval from *Hanson v.*

*Wightman*, 14 Wash.App. 78, 86, 538 P.2d 1238, 1245 (1975), as follows:

> However, an attorney need not inquire into matters that do not pertain to the discharge of duties that he has undertaken.... Likewise, an attorney need not make inquiry where the responsibility of the matter is assumed by the client.

Plaintiffs handled their own affairs with the bank in negotiating their financing. When they failed to obtain further credit, fault and damages were sought as flowing from an attorney-client relationship. But that which doesn't exist can bear no fruit.

The granting of summary judgment to defendant is affirmed.

AFFIRMED.

All Judges concur except DONIELSON, J., who dissents, and SACKETT, J., who specially concurs.

SACKETT, Judge (specially concurring).

The plaintiffs appeal from a summary judgment for defendant law firm and attorney. The basis of the plaintiffs' complaint is their line of credit was terminated because of the lawyer's action or inaction. Defendant Meyer was a member of the board of directors that terminated the plaintiffs' credit.

The uncontroverted facts are the plaintiffs' line of credit would have been terminated irrespective of any action or inaction on the part of defendant lawyer or law firm. The members of the board of directors filed affidavits stating their vote would have been the same irrespective. Plaintiffs do not contradict these facts. As such there is no evidence from which a trier of fact could determine the actions or inactions of the defendant attorney and/or law firm caused the damages for which plaintiffs are claiming relief. Plaintiffs have failed to show necessary damages and accordingly I concur with the majority's affirmance of the trial court's order granting summary judgment.

DONIELSON, Judge (dissenting).

I respectfully dissent. Although I concur with the majority's discussion of the

applicable legal standards, I would find that the trial court erred in granting summary judgment. The record reveals that the Meyer Law Firm had represented the Steinbachs since approximately 1974, when Virgil Meyer incorporated the Steinbachs' business, Model Enterprises, Inc. Members of the firm had performed some tax work for the Steinbachs. In 1978, Virgil Meyer drafted papers for the plaintiffs concerning the bank and a slaughterhouse. In 1979, James Meyer made changes in the corporation between the Steinbachs and Mr. Steinbach's parents. In 1983, two days before Virgil Meyer voted with the other directors of the bank to cut off the Steinbach's line of credit, the Steinbachs picked up a cattle feeding contract drawn up by Jim Meyer, intended to implement a debt restructuring agreement that had been made with the bank.

In their deposition testimony and affidavits, the Steinbachs expressed their belief that the Meyer firm represented them at all relevant times. The record also reveals that there was no express disclosure of the law firm's relationship with the bank made to the Steinbachs. Virgil and Jim Meyer both stated in their depositions that it was common knowledge within the Chariton community that the Meyer firm did legal work for the bank, but neither could state any specific basis for their belief that the Steinbachs were aware of that fact. Tom Steinbach stated that he knew Virgil Meyer was on the bank's board of directors. The Steinbachs did not present any direct evidence that any members of the Meyer firm gave the bank any confidential information. Affidavits of the other directors of the bank were submitted stating that they would have voted to terminate the Steinbachs' line of credit regardless of how Virgil Meyer voted.

From these facts, I cannot say that a rational trier of fact could not find that an attorney-client relationship existed between the Steinbachs and the Meyer Law Firm. Viewing the underlying facts and inferences to be drawn therefrom in a light most favorable to the Steinbachs, I find that a rational trier of fact could find that conduct of the parties evidence a long, on-going

attorney-client relationship between the Steinbachs and the Meyer firm or at least at the time James Meyer completed the cattle feeding contract for the debt restructuring program, despite the fact that no retainer had been paid. Considering the fact that the Meyer Law Firm knew of the Steinbachs' debt restructuring plan and had drafted a cattle feeding contract necessary to implement that plan only several days before Virgil Meyer and the other bank directors voted to cut off the Steinbachs' credit, I believe a finder of fact could reasonably infer that the bank's board of directors was influenced by Virgil Meyer's knowledge of the Steinbachs' debt restructuring plan. Even though the underlying facts may not be disputed, since a rational trier of fact could draw different inferences and reach different conclusions from the facts in the present case, I find summary judgment was inappropriate in the present case, and the question of whether an attorney-client relationship existed between the parties should have been submitted to a trier of fact.

The Meyer firm, however, contends that a violation of the canons of ethics does not create a cause of action for civil liability and that, furthermore, the Meyer firm owed no duty to the Steinbachs. In support of their position, the defendants cite to *Brody v. Ruby*, 267 N.W.2d 902, 907 (Iowa 1978). The *Brody* case is, however, factually distinct from the present case. In *Brody*, a physician sued a former patient and her lawyers in a prior action for malpractice against the physician. 267 N.W.2d at 903. The physician alleged that plaintiff's lawyers negligently failed to investigate the facts and circumstances surrounding the malpractice claim before filing suit. *Id.* at 906. In holding that the physician had no cause of action against the plaintiff's attorneys, the Iowa Supreme Court stated that "[a]bsent special circumstances it generally is held *an attorney can be liable for consequences of professional negligence only to a client." Id.* (emphasis added). In discussing the applicability of the Code of Professional Responsibility for Lawyers, the court opined that the

Code does not "create grounds for imposing liability to a *third party* for negligence." *Id.* at 907 (emphasis added). The *Brody* court ultimately held that the Iowa Code of Professional Responsibility for Lawyers does not furnish a basis for a private cause of action for negligence "in the circumstances of this case." *Id.* I therefore read the opinion in *Brody* as holding that a successful *adverse* or third-party litigant may not later file suit for negligence against opposing attorneys pursuant to the provisions of the Iowa Code of Professional Responsibility for Lawyers. I do not read the *Brody* opinion as prohibiting a legal malpractice suit by a *client* against his or her attorneys in negligently failing to protect the client's interests.

Iowa law generally holds that issues of negligence are not ordinarily susceptible of summary adjudication but should be resolved by trial in an ordinary manner. *Schermer,* 380 N.W.2d at 687. In the present case, the Steinbachs allege that Virgil Meyer and the Meyer firm was negligent in failing to adequately disclose their connections with the bank. I note that in *Woodruff v. Tomlin,* 616 F.2d 924, 936 (6th Cir.1980), the sixth circuit recognized that the Code of Professional Responsibility does not undertake to define standards for civil liability of lawyers for professional conduct. The *Woodruff* court, however, further stated that the Code nevertheless constitutes some evidence of the standards required of attorneys. *Id.* The *Woodruff* court ultimately opined that the trial court erred in declining to submit to a jury the issue of whether the attorney's failure to advise the plaintiffs fully of a conflict of interest in representation of the plaintiffs and an adverse insurance company was legal malpractice. *Id.* The court additionally noted that the remoteness of the possibility of recovery was not controlling, but rather that an opportunity for recovery was denied. *Id.* Given my earlier analysis of the facts, I believe a rational trier of fact could draw a conclusion that the Meyer firm failed to adequately disclose their relationship with the bank to the Steinbachs.

I also believe the trial court was incorrect in ruling that as a matter of law the bank directors would not have voted differently had Virgil Meyer abstained from voting or voted in favor of maintaining the Steinbachs' line of credit, based upon the bank directors' affidavits. In determining, on motion for summary judgment, whether there is a factual issue precluding summary judgment, the courts can no longer safely rely upon statements in the affidavits of either party to resolve the question. *Northwestern National Bank of Sioux City v. Steinbeck,* 179 N.W.2d 471, 475–76 (Iowa 1970). Since the Steinbachs stated in depositions that they did not know whether Virgil Meyer actually influenced the board of directors' vote, but believed that there was a possibility such influence had been exerted, this issue should have been left for the jury to determine.