# MERCHANTS' BANK v. HANNA.*
## No. 9901.

Circuit Court of Appeals, Eighth Circuit.
Nov. 12, 1934.

*Rehearing denied Jan. 5, 1935.

William G. Boatright, of Kansas City, Mo. (I. J. Ringolsky, Harry L. Jacobs, Ringolsky, Boatright & Jacobs, and Daniel S. Millman, all of Kansas City, Mo., on the brief), for appellant.

D. S. Lamm, of Sedalia, Mo. (Paul Barnett and Watson, Ess, Groner, Barnett & Whittaker, all of Kansas City, Mo., and Lamm, Bohling & Barnett, of Sedalia, Mo., on the brief), for appellee.

Before STONE, Circuit Judge, and JOYCE and BELL, District Judges.

BELL, District Judge.

This is an action at law by J. W. Hanna as receiver of the People's National Bank of Clinton, Mo., against the Merchants' Bank of Kansas City, Mo., to recover the sum of $6,077 which was deducted from the deposit of the People's National Bank by the Merchants' Bank. The jury found for the plaintiff, and judgment was entered accordingly. A motion for new trial was overruled, and the defendant appealed. In this opinion appellant will be referred to as the Merchants' Bank or defendant, the appellee as the plaintiff, and the People's National Bank of Clinton as the People's Bank.

The plaintiff for a cause of action alleged: That the People's Bank was closed by the Comptroller of the Currency, and the plaintiff was appointed receiver on January 23, 1932; that prior to November, 1929, the People's Bank, at the solicitation of the Merchants' Bank, became one of its depositors; that J. M. Spangler, who was the president of the People's Bank and indebted to it for the legal limit, desired to borrow $6,000 to meet certain personal obligations; that arrangements were made for Spangler to borrow that sum from the Merchants' Bank on a note made payable to the People's Bank and indorsed by it without recourse to the Merchants' Bank; that this arrangement was carried out, the People's Bank being given credit on its account, and it in turn paying the money to Spangler; that the note was renewed from time to time, the last renewal being on October 30, 1931, which was signed by Spangler, his wife, son and daughter; that the makers of said note became indebted to the Merchants' Bank; that the note was the property of said bank, and not at any time an asset of the People's Bank; that on January 15, 1932, the Merchants' Bank illegally and without authority charged the account of the People's Bank with the sum of $6,077, the face of the note with interest, and mailed the note to the People's Bank; that the plaintiff duly tendered a return of the note to the Merchants' Bank, which was refused, and on the commencement of this action deposited the note with the court.

The Merchants' Bank for its defense alleged: That it did not make the loan to Spangler on the original note or any renewal thereof, but made it to the People's Bank; that the People's Bank, in order to procure a loan, represented that the original note was for a loan made by it to Spangler, was an asset of the People's Bank, and acquired by it in the course of its regular business; that the People's Bank further represented that Spangler owned certain real estate and personal property, was the richest man in the county in which he lived, and was financially responsible; that these representations were false, but the Merchants' Bank, in reliance on them, entered into an oral agreement with the People's Bank to purchase said note with the understanding that on demand the People's Bank would repurchase said note for the amount due thereon; that, while it was a contract for the purchase and sale of the note, it was an arrangement whereby the People's Bank borrowed $6,000 from the Merchants' Bank with a promise to repay same on demand; that, pursuant to said agreement, the Merchants' Bank paid the money to the People's Bank by crediting its account with said sum; that the People's Bank procured the renewals, and each time repeated the false representations; that, when the Merchants' Bank learned of the falsity thereof, it demanded the performance of the oral agreement, sought authority to charge the note with interest to the People's Bank, and such consent was given.

There are certain significant facts about which there is no controversy as follows: The original note and the renewal notes were payable to the People's Bank, but indorsed by it "without recourse," and accepted with that indorsement by the Merchants' Bank. According to the records of the People's Bank, the loan was not made by it to Spangler, and the original note was never an asset of the People's Bank; neither were the renewal notes. At the time of the execution of the original note, Spangler owed the People's Bank a total of $5,900 on several notes, not including the $6,000 note. The books of the Merchants' Bank did not show any liability of the People's Bank on account of the note, and they did show that it was carried in its assets as the note of Spangler. In other words, the books of the People's Bank did not

show that it had made the loan to Spangler, while the books of the Merchants' Bank showed that it did make the loan to Spangler and did not make it to the People's Bank. There is nothing in the records of these banks or the correspondence between them showing the existence of an oral agreement. Four circulars at different times were sent to the Merchants' Bank by the Comptroller of the Currency for information verifying the account of the People's Bank with the Merchants' Bank. These circulars contained printed questions with a blank space after each wherein the answers could be written. The questions were answered in the negative. The circulars were signed by R. A. Edlund, cashier of the Merchants' Bank, dated January 20, 1930, July 7, 1930, January 16, 1931, and September 8, 1931, respectively, and were mailed to the Chief National Bank Examiner. The three questions material to the issues follow:

"1. Rediscounts.—Did your bank on the above date of examination hold any bills receivable of the above bank, purchased or discounted by your bank, bearing the official indorsement of the bank under examination, or for which it was in any way liable? If so, please furnish a list giving names and amounts.

"2. Bills payable.—On the above date was the bank under examination indebted to your bank for money borrowed, or liable in any way on paper held or owned by your bank? If so, specify character of liability, whether upon bills payable, certificate of deposit, open account, by guaranty, or otherwise. In each case specify amount, security, if any," etc.

"4. Repurchase agreement.—Did your bank on above date hold any securities or bills receivable taken from above bank or from any of its officers, under an agreement or understanding to repurchase by it at a future date, or under written or oral authority to charge them to the above-named bank? If so, give detailed list with particulars."

The negotiations relative to the transactions were conducted by Edlund, cashier, and Lebrecht, president, of the Merchants' Bank, and Major, the vice president and managing officer of the People's Bank. Edlund and Major were intimate friends, but their testimony was decidedly conflicting.

Major testified: That Edlund for some time had urged him to deposit the principal, active account of the People's Bank at Kansas City in the Merchants' Bank as a correspondent; that he had a conversation with Edlund about November 1, 1929, at Clinton, in which he told Edlund that Spangler owed $6,000 on a past-due obligation to another bank, and that payment thereof had been demanded; that he inquired of Edlund whether the Merchants' Bank would make a loan to Spangler, whereupon Edlund, after examining Spangler's financial statement, said that the Merchants' Bank would make the loan; that at the request of Edlund the note was made payable to the People's Bank, and indorsed by it without recourse; that the note thus indorsed was handed to Edlund, who took it with him to Kansas City; that the next day the People's Bank was credited with $6,000; and that Spangler checked it out of the People's Bank. Major denied that he had ever said that the People's Bank would take the note back at any time on demand, and that he ever authorized the Merchants' Bank to make the deduction.

Edlund testified: That prior to November 1, 1929, Major, in a conversation at the Merchants' Bank, told him and Lebrecht that Spangler had owed the People's Bank $6,000 for some time; that he wanted to get it out of the bank to avoid criticism, and requested them to carry it for a time; that the People's Bank would indorse it without recourse, and would repurchase it at any time; that he told them Spangler was not active in the bank, but was a very wealthy man; that on November 1, he called at the People's Bank, saw Spangler's financial statement, took the note, and gave the People's Bank credit for it; and that Major expressly authorized and directed him to deduct the sum necessary to pay the note from the deposit of the People's Bank. Lebrecht corroborated this testimony of Edlund.

The financial statement of Spangler at the time of the execution of the note showed a net worth of $163,000; consisting of farm lands valued at $15,000, a residence at $6,000, and stocks at $30,000. He had an indebtedness of $23,000. From that time to the date of the last renewal Spangler transferred much of his property to his son and daughter and mortgaged the balance. Apparently, he became greatly involved and unable to pay his debts. At the time of the trial, he was an aged man, and was mentally and physically unable to appear and testify. He never had been a customer of the Merchants' Bank, and was unknown either to Edlund or Lebrecht.

Major handled the transaction at the time of the execution of the original note, also the first renewal dated April 30, 1930, the second renewal dated October 30, 1930, and the third renewal dated April 30, 1931. A son of

Spangler was in Kansas City, and negotiated the fourth renewal dated October 30, 1931. The third and fourth renewals were signed by Spangler, his wife, son and daughter. The fourth renewal note was mailed to the Merchants' Bank by Major without an indorsement, whereupon it was returned to the People's Bank by Edlund with a letter requesting that the note be indorsed without recourse and returned. The interest due at the time of each renewal was charged by the Merchants' Bank to the account of the People's Bank, but in each instance was collected from Spangler.

Appellant contends: (1) Error in charge of the court making appellant's right to rescind dependent on proof of scienter; (2) error in refusing to submit issue of misrepresentation as to the character of the note; (3) error in charge placing burden of proof on appellant; and (4) admission of incompetent evidence.

■ The court instructed the jury that there were two defenses: First, the oral agreement to repurchase the note; and, second, misrepresentation. Clearly, the defense pleaded was the oral agreement. The misrepresentation of the ownership of the note by the People's Bank, the financial responsibility of Spangler, and the desire to accommodate the People's Bank apparently were alleged to show the inducement to the Merchants' Bank to take the note, and the discovery of the falsity of the representations as the reason for charging the amount due to the deposit of the People's Bank. However, it is unnecessary to decide whether the defense of misrepresentation was pleaded, proved, or properly submitted to the jury. If error, it was strongly in favor of appellant, and, as the jury found for the appellee, no harm was done. The error was in favor of the losing party.

■ I. The first contention of appellant is that the court erred in charging the jury that the right of rescission was dependent on proof of scienter. A very conclusive answer to the contention is that the right of rescission was not involved in the case. It was neither pleaded nor proved. It was not covered by the charge of the court or by instructions requested by appellant and refused by the court, and there was no reason why it should have been. The defense alleged was the oral agreement to repurchase the note and a full performance of that agreement by both parties. There is nowhere in the answer a claim of the right to rescind the purchase of the note because of misrepresentation, irrespective of the oral agreement; and there is no

assertion that a right to rescind, based on such misrepresentation, was exercised, or was being offered as a defense. It was alleged that the deduction was authorized and was made. According to the theory contained in the answer, the contract then was fully performed. A contract that has been performed cannot be rescinded, because there is nothing left to rescind; and the remedy then is an action at law for damages. Rescission is to save a loss where a contract has not been performed, or a greater loss where there has been only partial performance.

■■ Moreover, if the right to rescind ever existed, it was waived. At the time of the second renewal of the note, the People's Bank advised the Merchants' Bank that it was desirable to have the signature of Spangler's wife. At the time of the third renewal, the People's Bank advised the Merchants' Bank that Spangler had conveyed much of his property to his son and daughter, that he had mortgaged the balance, and that it was desirable to have the signatures of the son and daughter to the note in addition to that of Spangler and his wife. At the time of the fourth renewal of the note, the son who signed it called at the Merchants' Bank in Kansas City and arranged for the renewal, whereupon Edlund wrote Major that the son appeared greatly relieved by the extension of sixty days. At that time the son informed the Merchants' Bank that he hoped to be able to obtain funds from a sale of his father's bank stock to pay the note or make a reduction of it within the period of sixty days. There was ample opportunity in that conference for the Merchants' Bank to ascertain the change in the financial condition of the original maker of the note and those who later signed the renewals. The loan was then two years old. It is not likely that these bankers failed to understand such obvious indications of financial difficulties. Notwithstanding this, the fourth renewal was allowed, and, when the crisis came, the Merchants' Bank, according to the testimony of Edlund and Lebrecht, sought authority to charge the note to the account of the People's Bank, obtained such authority, exercised it, and relied on the performance of the alleged agreement. No steps were taken at any time to rescind. It is well settled that a contract may be rescinded for misrepresentation, fraud, and deceit, but, if the injured party conducts himself with respect to it as though it were a subsisting and binding agreement, he will be deemed to have affirmed the contract and waived his right to rescind. Ford Motor Co. v. Pearson (C. C.

A.) 40 F.(2d) 858; McLean v. Clapp, 141 U. S. 429, 12 S. Ct. 29, 35 L. Ed. 804. Having selected the contract for its defense, appellant cannot urge rescission. The remedies are inconsistent, and the selection of one was an abandonment of the other. Young v. Main (C. C. A.) 72 F.(2d) 640; Issenhuth v. Kirkpatrick (C. C. A.) 258 F. 293.

■ The court included scienter as an essential element in submitting the defense of misrepresentation; but properly so, if such defense should have been submitted. Scienter is always necessary to a cause of action, or a defense, at law based on misrepresentation, fraud, and deceit. Boatmen's National Co. v. Elkins & Co. (C. C. A.) 63 F.(2d) 214; Denning & Co. v. Lumber Co. (C. C. A.) 51 F.(2d) 945.

■ The court charged the jury that appellant did not attempt to rescind. The instruction was not called for under the pleadings and the evidence, but no exception was saved, and, furthermore, it was harmless.

This contention of appellant is based on a mistaken premise that there was a rescission of the contract and it cannot be sustained.

■ II. The second contention of appellant is that the court erred in refusing to submit the issue as to the character of the note. The original note and the renewal notes were indorsed "without recourse." This qualified indorsement was a warranty that the notes were genuine, what they purported to be, and that the indorser had title. The appellant contends that the character of the note with the indorsement was a representation and a warranty that there was an indebtedness to the People's Bank of Spangler, and that this was not true. This representation, if it be such, was not an issue in the case, was entirely immaterial, and the character of the indorsement itself in effect was notice of the immateriality of it. Certainly the Merchants' Bank was not induced by the indorsement to purchase the note. Such an indorsement is to protect the indorser from liability by reason of the indorsement.

■ The court instructed the jury that, if it should find that the note was the valid obligation of Spangler, it was entirely immaterial whether it represented money borrowed from the People's Bank, or, before its negotiation to the defendant, constituted a part of its assets. In other words, the jury was instructed that it could not base its verdict on a finding that the character of the note as a bank loan originally made by the People's Bank was falsely represented to the Merchants' Bank. Unless there was something in the character of the note affecting its validity and value, the question of whether it evidenced a previous loan by the People's Bank to Spangler was immaterial. The validity of the note was not challenged; and the evidence did not show that the original note at the time of its execution was not collectible. It is a familiar rule that in an action to cancel an instrument, or to recover damages, on the ground of fraud and deceit, it must be shown that the false representations were of a material fact. Therefore under the evidence in this case there was no error in the instruction of the court.

■ III. The third contention of the appellant is that the court erred in placing the burden of proof as to certain issues on the defendant. The charge as a whole placed the burden of proof on the plaintiff to establish a prima facie case. It then placed the burden of proof on the defendant to establish the two affirmative defenses; that is, the oral repurchase agreement and the misrepresentation. Clearly, both these defenses were of the affirmative character and constituted no part of the plaintiff's case. It is contended that, because of the allegations of the petition, the plaintiff assumed the burden of proof. It is possible that a plaintiff in anticipating affirmative defenses may be required to prove allegations made, especially where the answer is merely a denial, but such a rule does not apply here. The answer alleges at length the oral agreement to repurchase as an affirmative defense. The charge in this respect was entirely proper, conveyed no misconception of the law, and left no room for misinterpretation by the jury. There is no merit in this contention.

■ IV. The fourth contention is that the court erred in admitting incompetent evidence offered by the plaintiff to show that Spangler received the money on the note and paid it on a personal obligation. It is alleged in the petition that Spangler desired to borrow the money to pay a personal obligation. It is alleged in the answer that the loan was to the People's Bank and for the accommodation of the People's Bank. This presented the issue as to whether the loan was for Spangler or for the People's Bank. While the issue thus joined was collateral, it was responsible for the admission of the evidence. Appellant by its pleading participated in the invitation to the introduction of such testimony; in any event, it is not so prejudicial as to justify reversal.

V. Finally, appellant says that the verdict is for the wrong party. No doubt this expresses the feeling of disappointment frequently attending the defeated party to a suit. In this connection a few commentaries on the facts may not be amiss.

It is very significant that the original note and each of the renewal notes were indorsed without recourse. Bankers particularly know the meaning of such an indorsement. Major said that this indorsement was made at the request of Edlund. This was disputed by Edlund, but the jury determined which of the two was telling the truth.

The book entries of the two banks and the correspondence between them, covering a period of more than two years before the controversy arose, failed to show the repurchase agreement. The books of the People's Bank did not show a loan to Spangler. The books of the Merchants' Bank showed a loan to Spangler and none to the People's Bank. The written answers of Edlund to the inquiries of the Comptroller of the Currency were especially condemnatory of appellant's theory.

The chief objective of the Merchants' Bank apparently was to secure the active account of the People's Bank, and the loan may have been made to curry its favor; but that does not prove that it intended to look to the People's Bank for payment. In a sense it was accommodating the People's Bank; and yet, in addition to accepting the note with the qualified indorsement, we find a significant statement in a letter from Edlund to Major dated May 4, 1931, as follows: "You might show this letter to Grady (the son) and tell him I am only too glad to accommodate his father with this renewal, but I want the additional indorsements." When Spangler executed the note, it may have been collectible. There is evidence to show that it was; there is no evidence to the contrary. Evidently the calculations of both Edlund and Major miscarried because of the shrinkage in Spangler's fortune.

Had there been an intention to hold the People's Bank on the note, it would have been very simple to have done so by an unqualified indorsement. This should have been followed of course by proper entries in the books of both banks and by truthful answers to the inquiries of the Comptroller of the Currency. Such conduct would have been in accordance with sound, ethical banking. Appellant then would not have been required to rest a defense on an oral agreement wholly at variance with the records, or on the questionable conduct of the bank officials.

The jury on very substantial evidence found that there was not an agreement to repurchase the note and that there was not actionable deceit; and certainly it is not incumbent on this court, on the record presented, to disturb the finding by holding that the verdict was for the wrong party.

The judgment is affirmed.