Dorothy SCHERMER; Kara Marie Schermer and Mary Christine Schermer, Minors, by Ron Schermer, their Father and Next Friend; and Ethel Neibauer, Appellants,

v.

Linda MULLER, as Administrator of the Estate of Danny Muller; and M.W. Thornburgh, as Administrator of the Estate of Karl Layne Anderson, Appellees.

No. 84–868.

Supreme Court of Iowa.

Jan. 15, 1986.

Rehearing Denied Feb. 24, 1986.

Raymond P. Drew of Hobson, Cady & Drew, Hampton, for appellants.

George Lindeman of Lindeman & Yagla, Waterloo, for appellee Muller Estate.

E.R. McCann and Jim D. DeKoster of Swisher & Cohrt, Waterloo, for appellee Anderson Estate.

WOLLE, Justice.

The plaintiffs, eastbound travelers on a two-lane Iowa highway, were injured when their automobile collided with a pickup which itself was involved in a head-on collision with a second pickup. The summary judgment record we here review discloses much about how the three vehicles were being operated as they proceeded toward each other, but little about their movements just before impact. The trial court granted summary judgment for the defendants, administrators of the estates of the two pickup drivers, on the ground that negligence could not be presumed and had not been established by evidence in the summary judgment record. The court of appeals reversed, finding in the summary judgment record substantial evidence from which a jury could infer that one or both of the pickup drivers were causally negligent. We affirm the decision of the court of appeals and remand the case to the district court for further proceedings.

This personal injury action was commenced by plaintiffs Dorothy Schermer, her minor daughters Kara Marie and Mary Christine, and her mother Ethel Neibauer. Dorothy Schermer was the driver of the automobile in which the other three plaintiffs were passengers. Danny Muller and Karl Layne Anderson were the owners and operators of the two pickup trucks which collided at about the same time and at the same place where the Schermer vehicle struck Anderson's pickup. Both Muller and Anderson were killed in the accident and are represented as defendants by the respective administrators of the two decedents' estates. For convenience we refer to the defendants as Muller and Anderson.

Discovery depositions were taken of all known surviving eyewitnesses, and the summary judgment record consists of affidavits, transcripts of the deposition testimony, and plaintiffs' answers to written interrogatories. Plaintiffs must rely in part on circumstantial evidence, because there is little direct evidence of what happened in the last few seconds before the vehicles collided. Of the three drivers directly involved, only plaintiff Dorothy Schermer survived the collision. Moreover, blowing snow from a semi truck-tractor she was meeting just before the collisions obscured both her view of the collision scene and the semi driver's view to the rear. Schermer's mother Ethel Neibauer, a passenger, had no recollection of what happened other than the general nature of the planned trip. Schermer's two daughters, six and one-half years old and twenty months old at the time of the accident, respectively, were unable to recount what happened.

The summary judgment record, though understandably silent in some respects, does reveal many essentially undisputed facts leading up to the collisions involving the Schermer, Anderson and Muller vehicles. The collisions occurred on the morning of April 5, 1982, on Iowa highway 3, west of Allison. Schermer, with her two daughters and her mother, was traveling east toward Waterloo from her home in

Hampton. She was driving approximately thirty-five to forty-five miles per hour because a snowstorm and traffic were creating patches of packed snow on the paved roadway. At Dumont, Anderson's pickup pulled out onto the highway ahead of the Schermer vehicle, and Anderson and Schermer proceeded east, with Schermer approximately fifteen to twenty car lengths behind Anderson.

Meanwhile two vehicles were traveling west on the highway toward the eastbound Anderson and Schermer vehicles. Terry Weller, not a party in this lawsuit, was operating a semi truck-tractor and pulling an empty petroleum tanker, driving west on the highway at approximately thirty-five to forty-five miles per hour. Behind Weller's semi was defendant Muller, driving a pickup with a propane gas tank in the bed and towing a small stock trailer. Weller judged the speed of Muller's pickup to be faster than his own because Muller was steadily closing the distance between them.

As Weller, driving the lead westbound vehicle, met the eastbound Anderson pickup, Weller noticed snow on the highway that was being blown about by the wind. At that time all four vehicles appeared to be in their own right hand lanes of travel. After Weller met and passed the Anderson pickup, he observed in his rearview mirror that his semi had kicked up a large cloud of blowing snow. Weller next met and passed the eastbound Schermer vehicle which was following Anderson. Dorothy Schermer testified that her vision was completely obscured by the snow that the semi had sprayed up as it passed her.

As Schermer came out of the blinding conditions caused by the blowing snow around Weller's semi, she saw Anderson's pickup stopped directly in front of her in the eastbound lane of travel a short distance ahead. Schermer attempted to brake but was unable to stop before her vehicle struck the Anderson pickup causing the injuries for which plaintiffs seek recovery from the estates of Muller and Anderson.

Although Schermer did not see the Muller pickup before colliding with the Anderson pickup, we know that the Muller and Anderson pickups also collided head-on behind the Weller semi, either before or after Schermer collided with the Anderson pickup. Neither Muller nor Anderson survived that collision, and Schermer did not see the pickups collide. Weller saw in his rearview mirror only a ball of fire behind him in the blowing snow, which he attributed to the collision of the two pickups. Weller stopped immediately and parked his semi on the shoulder of the westbound lane of the highway before returning to the scene of the collisions. Weller's deposition testimony, set forth in more detail hereafter, provides critical support for the plaintiffs' negligence claims, particularly the claims against Muller.

Another witness by deposition was an Iowa state trooper who, by coincidence, had been proceeding west on the highway to investigate a separate accident west of Dumont. The trooper saw a ball of fire rise up over a knoll ahead of him, then came upon the three vehicles scattered about in the roadway. The trooper noted in his testimony that the Muller pickup, which he later learned had been westbound, was completely turned around and facing in a southeasterly direction. The Anderson pickup, which had been eastbound before the collision, was stopped at an angle perpendicular to the roadway. The Schermer vehicle was facing east. Neither Weller nor the patrolman could find marks on the highway nor any other evidence at the scene from which they could determine which of the vehicles had first crossed over the center line. The circumstances, of course, foreclose any possibility that all of the vehicles remained in their own right hand lanes of travel preceding the collisions, for if they had the eastbound Anderson and Schermer vehicles would simply have met and passed the westbound Muller vehicle without incident.

Plaintiffs filed three separate petitions against the estate of Muller and Anderson for personal injury damages arising from the accident. These petitions contained common allegations of negligence against

the defendants, including a pleaded theory of res ipsa loquitur, and the district court entered an order consolidating the three cases. The court held a hearing on defendants' resisted motions for summary judgment in the consolidated cases and then granted the motions of both defendants, finding res ipsa loquitur inapplicable and no factual support for plaintiffs' specific allegations of negligence. We transferred to the court of appeals the plaintiffs' direct appeals from those summary judgments. The court of appeals reversed, holding that genuine issues of material fact precluded entry of summary judgment even though the doctrine of res ipsa loquitur was inapplicable to these factual circumstances.

We have granted defendants' applications for further review of the court of appeals decision and here consider whether defendants were entitled to summary judgment on plaintiffs' negligence claims. We have not granted plaintiffs' cross-application for further review and therefore do not address that portion of the district court opinion which found the doctrine of res ipsa loquitur inapplicable to the facts of this case.

## I. *Review of Summary Judgment Record.*

Starting with the essentially undisputed background facts summarized above, we must ascertain whether the full summary judgment record discloses genuine issues of fact for trial. *Sherwood v. Nissen,* 179 N.W.2d 336, 339 (Iowa 1970); Iowa R.Civ.P. 237(c). General principles governing that determination can more easily be repeated than applied. We concisely stated in *Tasco, Inc. v. Winkel,* 281 N.W.2d 280 (Iowa 1979):

> The trial court (and this court on review) must look at the whole record in the light most favorable to the one against whom the motion is made. The moving party has the burden to show the absence of a fact issue. Even if the facts are undisputed, summary judgment is not appropriate if reasonable minds

may draw different inferences from them.

*Id.* at 282. We also explained in *Knapp v. Simmons,* 345 N.W.2d 118, 121 (Iowa 1984), that summary judgment is functionally akin to a directed verdict, with the nonmoving party entitled to "every legitimate inference that reasonably can be deduced from the evidence" and summary judgment inappropriate "if reasonable minds can differ on how the issue should be resolved."

■ Issues of negligence, contributory negligence and proximate cause are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner. *Daboll v. Hoden,* 222 N.W.2d 727, 734 (Iowa 1974). As explained in *Sherwood v. Nissen,* 179 N.W.2d at 339:

> Some ultimate facts lend themselves more readily to categorical proof than others. A plaintiff suing on a note is usually in a considerably different position than a plaintiff suing for negligence.

Summary judgment may be as inappropriate when the reasonableness of conduct must be determined from evidence which is largely circumstantial, as when a plaintiff relies entirely on direct evidence. Direct and circumstantial evidence are equally probative, and generally questions of negligence, contributory or comparative negligence, and proximate cause are for the jury. Iowa R.App.P. 14(f)(10), (16). It is also well established that a jury question is engendered, even though facts are not in dispute or contradicted, if reasonable minds might draw different inferences from known facts. Iowa R.App.P. 14(f)(17). As the Court of Appeals for the Eighth Circuit has observed:

> Evaluative judgment between two rationally possible conclusions from facts cannot be engaged in on summary judgment.

*Chenette v. Trustees of Iowa College,* 431 F.2d 49, 53 (8th Cir.1970).

In applying these well-established principles to the circumstances of this case, we first focus on plaintiffs' allegations of causative negligence directed to defendant Mul-

ler, then those directed to defendant Anderson.

## II. *The Claims Against Muller.*

In their petitions plaintiffs contend that Muller's causative negligence included his failure to yield one-half the roadway, failure to have his pickup under control, failure to drive at a reasonable speed under the circumstances, and failure to maintain a proper lookout. We focus first on the theory presented by the first specification, the allegation that Muller failed to yield one-half the traveled way in violation of Iowa Code section 321.298 (1981). If that one theory was supported by sufficient evidentiary material in the record, and inferences therefrom, to overcome Muller's motion for summary judgment, we need not decide whether at trial the evidence might also support submission of claims based on other specifications or theories. *See Little v. Watkins Motor Lines,* 256 F.2d 145, 150 (8th Cir.1958).

We find evidence in the deposition testimony of Weller which adequately supports plaintiffs' theory that Muller negligently crossed over the center line just before colliding with the Anderson pickup. Although there were some significant inconsistencies in the testimony Weller gave during his deposition, our task is not to determine his credibility but only to consider whether in the light most favorable to plaintiffs his testimony generated a genuine issue of material fact. Iowa R.Civ.P. 237(c).

Weller testified that he first observed the Muller pickup, pulling a stock trailer, about a mile and a half before reaching the place where the vehicles collided, and he observed it in his rearview mirror four to six times thereafter. Weller was traveling about 35 to 40 miles an hour, and Muller was "closing ground," driving "considerably faster than 35 to 40." After he met the Anderson pickup, Weller looked back through his rearview mirror. Asked by Muller's attorney why he looked back, Weller testified:

A. I felt there was going to be something happen between those vehicles and the vehicle following me.

Q. And why did you have that notion at that time? A. When I went through the snow, I picked up quite a bit of snow, the tires on the truck. And it definitely—

Q. You observed that through your rearview mirror? A. Right. And it definitely would have blinded anybody going in that. And a lot of people can't handle a situation like that.

Elaborating in answer to questions from the plaintiffs' attorney, Weller testified:

A. ... After you have been on the road for six, seven years, you will understand—I had a feeling something was going to happen behind me. I'm not psychic. I am not saying that, you know. I just—I had a feeling there was going to be an accident or the man was going to run off the road or something.

Q. Well, were you afraid he was going to try and pass you? A. I didn't know—you know, I knew something was going to happen behind me. I was more concerned about what was behind me than what was in front of me at that particular moment. I didn't know if he was going to try to come around me, if he was going to run into the back of me or what.

....

A. I had several options open to me. If the man was going to—if I had looked up and he was going to run into me, I had plenty of shoulder. I could have went to the shoulder and let him get on by without even having to leave the westbound lane. You know, I can't walk away and leave—if he would have run off the road, I would have stopped and went over and seen if I could help him. But I knew something was going to happen behind me.

During his deposition, Weller also testified that he had given a taped statement to an investigator after the collisions. Some of what he had said at that time was developed during the deposition. Weller said

that the center line of the roadway was visible when he went to the vehicles immediately after they collided. He said he had observed that the Muller pickup was "slightly over the center line and still in a westbound position." He also told the investigator that the Muller pickup "was about kind of a straddle of the center line."

From this Weller deposition testimony, together with other direct and circumstantial evidence in the record, a fact finder could reasonably deduce that Muller drove left of center just before his pickup collided with Anderson's pickup, negligently causing both the Muller-Anderson and Anderson-Schermer collisions. Muller was closing ground on Weller's semi at a place on the highway where visibility was obscured by blowing snow and surface conditions were treacherous. From those circumstances a fact finder could reasonably infer, among other things, that Muller may have braked and skidded across the center line into Anderson, or may have struck Anderson while trying to pass Weller on the left. These scenarios are not merely ingenious theories of plaintiffs' counsel; they are fact-based theories of sufficient probative force to support the plaintiffs' claims of causative negligence against Muller.

■ The plaintiffs' wrong-side driving specification of negligence is extracted from Iowa Code sections 321.297, .298 and .299 (1981). Those statutory rules of the road provided that motorists must generally drive on the right side of two-lane roadways and may cross onto the left side only when specially permitted to do so. A violation of those statutory rules of the road would constitute negligence in and of itself. *Bannon v. Pfiffner*, 333 N.W.2d 464, 469 (Iowa 1983); *Kisling v. Thierman*, 214 Iowa 911, 916, 243 N.W. 552, 554 (1932).

In cases involving claimed violations of these rules of the road our court has found relatively slim evidence, even evidence that was entirely circumstantial, to be sufficient to engender a fact question for the jury on whether one driver or another negligently caused a head-on roadway collision. *See, e.g., Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 642–43 (Iowa 1969) (circumstantial evidence sufficient to overcome direct testimony of one driver concerning alleged negligence in crossing center line); *Bokhoven v. Hull*, 247 Iowa 604, 607–08, 75 N.W.2d 225, 227 (1956) (no surviving drivers recalled how head-on collision occurred, but circumstantial evidence generated jury question since exact location of nonconforming vehicle need not be proved; *Hackman v. Beckwith*, 245 Iowa 791, 795–97, 64 N.W.2d 275, 278–80 (1954) (jury question where trucks met head-on on bridge; circumstantial evidence can overcome direct testimony); *Smith v. Darling & Co.*, 244 Iowa 133, 143, 56 N.W.2d 47, 53 (1952) (head-on collision on bridge; jury questions concerning control and wrong-side driving).

Federal decisions applying Iowa law have likewise held that a plaintiff need have very little evidence to generate a jury question on alleged causative negligence in head-on roadway collisions. *See Little v. Watkins Motor Lines*, 256 F.2d at 149–50 (reversing directed verdict for defendants where sufficient circumstantial evidence supported theory that § 321.298 was violated); *Guyer v. Elger*, 216 F.2d 537, 539–41 (8th Cir.1954) (circumstantial evidence deemed sufficient to generate jury question concerning wrong-side driving).

We recognize that a plaintiff's evidence is insufficient if it merely suggests a possibility of negligence or shows that negligence is "in the air"; the plaintiff has the burden to establish that injuries were proximately caused by negligence of an identified defendant. W. Prosser, *The Law of Torts* § 39, at 218–19 (4th ed. 1971); *see* 2 F. Harper & F. James, Jr., *The Law of Torts* § 19.4 (1956). We are satisfied, however, that the plaintiffs in this case have presented sufficient evidence connecting the manner Muller was operating his pickup to these tragic collisions. A finder of fact could reasonably conclude that Muller in driving the pickup violated Iowa Code

section 321.298 (1981) and proximately caused plaintiffs' damages.

### III. *The Claims Against Anderson.*

We turn to the evidence tending to support plaintiffs' claims against defendant Anderson. In their petitions, plaintiffs contend that Anderson blocked the eastbound roadway with his pickup, negligently causing the Schermer-Anderson collision. A statutory rule of the road pertinent to that allegation is Iowa Code section 321.354 (1981), which prohibits a vehicle from stopping and blocking the roadway. The trial court considered and rejected the applicability of that statute in sustaining Anderson's motion for summary judgment. The statute provides in pertinent part:

> Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles....

Under section 321.355 a motorist is excused from this statutory duty if the vehicle becomes disabled to such an extent that it is impossible not to occupy that portion of the highway. Section 321.355 provides:

> Section 321.354 shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

We have held that "impossible" in the context of this section means "not reasonably practicable." *Reed v. Willison,* 245 Iowa 1066, 1069–70, 65 N.W.2d 440, 442 (1954).

If the blocking of the highway by Anderson's pickup caused the Schermer vehicle to collide with it, Anderson could be found in violation of section 321.354. Such a violation would support the conclusion that Anderson was negligent per se, absent a legal excuse. *Pieper v. Harmeyer,* 235 N.W.2d 122, 130 (Iowa 1975); *see Kisling v. Thierman,* 214 Iowa 911, 916, 243 N.W. 552, 554 (1932).

The district court found as a matter of law that the Anderson pickup was "disabled" within the meaning of section 321.-355, a finding which necessarily made section 321.354 inapplicable. In cases involving alleged violations of section 321.354, or the applicability of the section 321.355 exception, our court has consistently found the presence of questions of fact for jury determination, precluding judgment for any party as a matter of law. *See Clark v. Umbarger,* 247 Iowa 938, 942, 75 N.W.2d 243, 246 (1956) ("There are many decisions of this court that the questions of violation and exception thereto, if any, under [sections 321.354–355] are questions for the jury."); *Tuhn v. Clark,* 241 Iowa 441, 442–44, 41 N.W.2d 13, 14–15 (1950) (jury question whether car, stopped so driver could remove ice from windshield, was "disabled" under section 321.355); *Boger v. Kellner,* 239 Iowa 1189, 1192, 33 N.W.2d 369, 371 (1948) (jury question whether car with stopped motor disabled under section 321.-355); *Hayungs v. Falk,* 238 Iowa 285, 295–96, 27 N.W.2d 15, 20 (1947) (jury question whether sections 321.354 and 321.355 applied to stalled truck); *Smith v. Pust,* 232 Iowa 1194, 1197, 6 N.W.2d 315, 317 (1943) (jury question whether car with punctured tire was "disabled" within the meaning of the statute); *Hamilton v. Luckey,* 315 N.W.2d 823, 826 (Iowa Ct.App.1981) (jury correctly instructed on possibility of legal excuse being applicable to semi with mechanical failure).

■ The burden was on defendant Anderson in this summary judgment proceeding to show the absence of a genuine issue of material fact on the negligence claims against him. There is, however, a genuine issue of material fact in this record as to whether Anderson's vehicle was blocking the highway in violation of section 321.354,

and plaintiffs have therefore made out a prima facie case against Anderson upon that specification of negligence. We need not consider whether there was sufficient evidence to generate a genuine issue of fact as to the other specifications of negligence directed against Anderson, because we conclude his motion for summary judgment should not have been sustained. *See Little v. Watkins Motor Lines,* 256 F.2d at 150.

## IV. *Summary.*

When we view this summary judgment record in the light most favorable to plaintiffs, and give plaintiffs the benefit of all favorable inferences that may reasonably be drawn from the evidentiary materials, we find genuine issues of fact concerning the causative negligence of both defendant Muller and defendant Anderson. We therefore affirm the court of appeals decision which reversed the district court's entry of summary judgments for both defendants. We have already denied the plaintiffs' application for further review, thereby leaving intact the district court and court of appeals holding that the doctrine of res ipsa loquitur is inapplicable to the circumstances of this case. The case is remanded for further appropriate proceedings in the district court.

DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF DISTRICT COURT REVERSED; REMANDED.

All Justices concur except McGIVERIN, UHLENHOPP and McCORMICK, JJ., who dissent.

McGIVERIN, Justice (dissenting in part).

I do not believe the summary judgment record generates a genuine issue of material fact on plaintiffs' claims against defendant Muller estate. Accordingly, I dissent from division II of the majority opinion and the result as it bears on defendant Muller. I agree with the conclusions by the majority as to plaintiffs' claims against defendant Anderson estate.

I. *The record.* In considering the validity of defendant Muller's motion for summary judgment we are bound by the record presented in connection with the motion which consisted of pleadings, depositions, affidavits and answers to interrogatories.

Instead, the majority has supplemented the record before us with important inferences, which are without foundation in the record. For example, the majority speculates:

> ... that Muller *may have* braked and skidded across the center line into Anderson, or *may have* struck Anderson while trying to pass Weller on the left.

(Emphasis supplied.) These assertions ignore the fact that the record evidence *is* that Muller was on his own side of the road at all material times.

II. *Applicable principles.* This case illustrates the maxim that, "Hard facts make bad law."

The majority feels compelled to leave an avenue of liability open for plaintiffs against defendant Muller, even though no evidence exists to generate a genuine issue of fact as to negligence on the part of Muller sufficient for plaintiffs to get by defendant Muller's motion for summary judgment under Iowa R.Civ.P. 237. In the process, the majority overlooks, or sets to one side, several established principles of review and law. They are as follows.

If, upon the basis of such materials before the court as would be competent proof at trial, the court would be compelled to direct a verdict for the movant, then it is proper to render summary judgment. *Meyer v. Nottger,* 241 N.W.2d 911, 917 (Iowa 1976) (citing *Sherwood v. Nissen,* 179 N.W.2d 336, 339 (Iowa 1970)).

Iowa Uniform Jury Instruction, No. 2.15, which our trial courts use with regularity states:

> The mere fact that a collision occurred and that the parties sustained damages (and injuries) is not, in itself, sufficient to show that either party was negligent. The burden is upon the party making the claim to establish that the other party

was negligent and this must be done by the greater weight or preponderance of the evidence.

To the same effect, see *Armbruster v. Gray*, 225 Iowa 1226, 1230, 282 N.W. 342, 344 (1938).

Circumstantial evidence is not sufficient to make a jury question when the conclusion involved is based on "surmise, speculation, or conjecture." *Harsha v. State Savings Bank*, 346 N.W.2d 791, 800 (Iowa 1984).

Even when the record is examined in the light most favorable to plaintiffs against whom Muller's motion was made, *Millright v. Romer*, 322 N.W.2d 30, 31 (Iowa 1982), the evidence is purely "surmise, speculation or conjecture" as to what Muller did after he was last seen by Weller, the truck driver, on Muller's own side of the road.

III. *The evidence as to Muller.* There are no living eyewitnesses to the Muller-Anderson collision, and no physical evidence was found to determine how the accident occurred or even the point of impact on the road. When Weller, the semi driver, last observed Muller's pickup in his rearview mirror, Muller was in the westbound lane, on the proper side of the road. Weller next saw the ball of fire from the explosion which occurred after the two vehicles collided. When Weller and Iowa Highway Trooper Hauser came upon the scene of the accident, although the Muller pickup at rest was facing the opposite direction from which it had been traveling, neither it nor any part of the other two vehicles was then over the centerline of the road.

In the deposition of Weller, counsel for plaintiff referred to an unsworn, unsigned tape-recorded statement that Weller had given to an investigator over the telephone in which Weller said that when he came upon the accident scene a portion of the Muller vehicle at rest was slightly over the centerline of the road. In the sworn deposition, Weller clearly stated that he was in error in the earlier statement and that the Muller vehicle was at rest on its own side of the road when Weller came upon the accident scene. In addition, Weller drew a deposition diagram showing the positions of all the vehicles shortly after the accident. This diagram, consistent with Weller's sworn testimony, also showed the Muller vehicle on its own side of the road. The taped unsworn statement was not part of the record for summary judgment purposes, and Weller firmly testified he was incorrect in that earlier statement. His deposition testimony was the substantial evidence we must consider in connection with defendant's motion. I would conclude the taped mistaken statement "is entitled to little weight on the scale of substantial evidence," *Chariton Feed and Grain, Inc. v. Harder*, 369 N.W.2d 777, 787 (Iowa 1985), and insufficient to generate a genuine issue of fact as to Muller being on the wrong side of the road shortly *before* the accident.

There is no evidence in this record to support any of the other specific allegations of negligence against Muller. The only testimony regarding the speed of the Muller vehicle is that of Weller, who testified that Muller lessened the distance between his pickup and the semi from one-quarter to one-eighth of a mile from the first time Weller saw Muller until just prior to the accident, one and one-half to three miles away.

The inferences by the majority that Muller *may have done* certain things, after he was last seen one-eighth of a mile behind Weller and on his own side of the road, come under the comment by Dean Prosser who stated:

> It is never enough for the plaintiff to prove merely that he has been injured by the negligence of someone unidentified. Even though there is beyond all doubt negligence in the air, it is still necessary to bring it home to the defendant.

W. Prosser and W. Keeton, *Prosser and Keeton on the Law of Torts* 218 (4th ed. 1971).

Based on the summary judgment record there is insufficient evidence to generate a genuine issue of material fact of causative negligence on the part of Muller. If this

summary judgment record were the trial record, the court would be compelled to direct a verdict against plaintiffs as to Muller.

IV. *Circumstantial evidence cases.* The majority cites several cases to the effect that circumstantial evidence was sufficient to generate a jury question on whether one driver or the other negligently caused a head-on highway collision and thus violated Iowa Code section 321.298, which requires vehicles meeting each other on a roadway to yield one-half of the roadway to each other by turning to the right.

In each of those cases, *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632, 642–43 (Iowa 1969); *Bokhoven v. Hull,* 247 Iowa 604, 607–08, 75 N.W.2d 225, 227 (1956); *Hackman v. Beckwith,* 245 Iowa 791, 795–97, 64 N.W.2d 275, 278–80 (1954); and *Smith v. Darling & Co.,* 244 Iowa 133, 143, 56 N.W.2d 47, 53 (1952), there was substantial circumstantial evidence from skid marks, pavement gouges, debris, dirt or location of vehicles at rest after the accident from which substantial inferences and conclusions could be made as to how the accident happened and the identity of the party who was on the wrong side of the road.

However, none of those items of evidence are contained in the present record to show whose negligence, if any, caused the Muller-Anderson accident and the consequent blocking of the highway as plaintiffs came upon the scene. There are no living eyewitnesses to the Muller-Anderson accident, no marks on the highway, no concentrations of debris or dirt from the vehicles, and all vehicles were at rest on their own sides of the road after the Schermer-Anderson accident.

As compelling as a desire for a recovery for plaintiffs may be, the record does not generate a jury question as to causative negligence by defendant Muller.

In its quest to keep Muller in the case, the majority, unfortunately and most importantly, has set to one side the legal principle embodied in our basic jury instruction in a negligence case that the mere fact a collision or accident occurred is not sufficient to show that either party was negligent. *See* Iowa Uniform Jury Instructions, No. 2.15.

V. *Conclusion.* Therefore, I would vacate the court of appeals decision. I would affirm the judgment of the district court in all respects as to defendant Muller, thereby letting Muller out of the case. As to defendant Anderson, I would affirm the district court's ruling as to the inapplicability of the doctrine of res ipsa loquitur under this record and would reverse that court's ruling as to causative negligence by Anderson, leaving Anderson in the case. I then would remand the case for further appropriate proceedings against defendant Anderson.

UHLENHOPP and McCORMICK, JJ., join this dissent.