Thomas THACKER, Administrator of
the Estate of Kevin Thacker,
Deceased, Plaintiff-Appellant,

v.

Kendall ELDRED and City of Marshall-
town, Defendants-Appellees.

No. 84–2004.

Court of Appeals of Iowa.

March 31, 1986.

Stuart M. Pepper, Des Moines, for plaintiff-appellant.

Michael J. Moon, of Cartwright, Druker & Ryden, Marshalltown, for defendant-appellee Eldred.

Patrick W. Brooks, of Brooks, Ward & Trout, Marshalltown, for defendant-appellee City of Marshalltown.

Heard by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

Plaintiff appeals the trial court's order granting defendant's motion for a judgment notwithstanding the verdict in a wrongful death action. We reverse and reinstate the verdict.

This is an action by Thomas Thacker, father and administrator of the estate of Kevin Thacker, the decedent, against the City of Marshalltown and its police officer Kendall Eldred for the wrongful death of his son. Plaintiff alleged in his petition that defendant Eldred either negligently or intentionally inflicted a wound to the head of the decedent, causing his death. Plaintiff also alleged that Eldred was negligent in his allowing the decedent to escape from his custody, and that defendant city had a duty through its employees to protect the safety and welfare of the decedent. Finally, plaintiff alleged that both defendants violated decedent's fourteenth amendment rights, his rights under 42 U.S.C. Section 1983 and 1988, and his eighth amendment rights.

The case was tried to a jury on October 17, 1984. After the plaintiff rested, defendants moved for a directed verdict on all issues. The trial court dismissed all claims of negligence against Kendall Eldred, all claims against the City of Marshalltown, and all 42 U.S.C. 1983 and 1988 claims. The court submitted to the jury only the claim that Eldred used unreasonable and deadly force upon Kevin Thacker. The jury returned a verdict in favor of the plaintiff for $13,663.00 in actual and compensatory damages, and $200,000 in punitive damages. Judgment was entered on the jury verdict. Eldred filed a motion for judgment notwithstanding the verdict and a motion for new trial. The trial court sustained the motion for judgment notwithstanding the verdict and conditionally granted a new trial in the event the trial court's judgment is reversed on appeal.

On appeal, plaintiff alleges the trial court erred in awarding defendant judgment notwithstanding the verdict, and in dismissing the 1983 civil rights claims against both defendant Eldred and the City of Marshalltown.

Kevin Thacker was arrested for OWI by Marshalltown police officers Kendall Eldred and Don Cole at approximately 12:55 a.m. on October 28, 1983. The officers transported him to the police station and arrived at the back door of the building at approximately 1:04 a.m. Officer Cole left defendant Eldred with Thacker once they entered the building and went to the front of the station to the dispatcher's room. Two other officers were in the station at the time Thacker was brought in. Officers Koenigs and Schubert were interrogating a juvenile suspect in a room near the dispatcher's room. The dispatcher, one Nancy Hayden, was also present in the station, at her duty position. Eldred took Thacker to the processing room, located in the oppo-

site corner of the station from the dispatcher's room.

Upon arriving at the police station, Eldred, Cole, and Thacker crossed a sixteen and one-half foot wide alley and entered through two doors, located on the south wall of the building housing the police station. The doors were approximately three feet apart, with entry or exit of the building through them requiring the opening of both doors. The insides of the doors were equipped with what are known as "panic bars," and are called, in the record, "push bar handles." To the west of the space between the two doors are two stairways, one leading to the upstairs and one leading to the basement. A short distance east of the processing room, where Eldred took Thacker, is located a rest room. (See diagram of the police station.)

At 1:20 a.m. (according to the dispatcher's tape recordings of radio transmissions), Eldred informed the dispatcher, by radio, that his prisoner had escaped and that the prisoner could be in the building or outside. The dispatcher immediately communicated Eldred's dilemma to the other officers in the station. Officers Templeton and Swearingen, who were half a block away, were summoned to the building and joined the search inside the station. Officer Koenigs searched the processing room and basement. Officer Schubert stayed with the juvenile suspect and never left the building. Officers Eldred, Cole, Templeton, and Swearingen searched the rest of

the station, including the basement, the second floor, and the roof. By this time, Officer Ruopp, out on patrol with the canine unit, also responded to the dispatcher's report and arrived at alley in the rear of the station. Officer Ruopp's call number that night was "102."

At 1:24 a.m., Kevin Thacker was reported lying in the alley between the police station and the coliseum. It is not clear who spotted the decedent first. According to the dispatcher's tape recording of the radio communications during the search, Officer Ruopp reported "102 is in the area." Several officers testified, however, that they heard Ruopp say, ". . . he's in the area." It was the defendant, Eldred, however, that was the first person to reach the decedent and who radioed the message, at 1:24 a.m., that the prisoner needed an ambulance.

The officers discovered the decedent lying on his back with a pool of blood under his head and blood drops extending across the alley. Thacker was transported by ambulance to the Marshalltown Community Hospital, and then flown by Life Flight helicopter to Des Moines, where he died six days later. The only injury found on Thacker's body was a minor skull fracture just above the left ear, near the temple area. No bruises were found on the body except for two similar bruises, one on the front of each armpit. Abrasions were also found on the decedent's nose and chin, but there were no bruises associated with those injuries. Decedent suffered no broken or chipped teeth, or cut lips.

On the front of decedent's clothes there was evidence of tar contact. Most visible were the tar stains on his upper legs, the belt and the abdomen area of his shirt. Tar was also indicated on his shoes. The left shoe, in particular, showed signs of pivoting which, according to testimony received at trial, could be an indication of a right turn. There was also evidence of blood on various parts of decedent's clothing and several buttons were missing from his shirt.

Plaintiff tried the case on the theory that when Thacker attempted to escape from the police station, a chase ensued, proceeding into the north-south alley behind the police station. Plaintiff postulates that there a struggle ensued with the defendant, Eldred, inflicting a blow to Thacker's head with a blunt object, either recklessly or intentionally, causing Thacker's injury and death. Plaintiff claims that there was sufficient evidence in the record to generate a jury question on those facts. Defendant, on the other hand, claims that plaintiff's evidence does no more than to raise a suspicion or speculation, and that even if it is believed that Thacker died as a result of a blow inflicted by someone, there is no evidence to generate a question for the jury as to Eldred's culpability.

**■ I. Judgment Notwithstanding the Verdict.** The trial court, in sustaining the motion for judgment notwithstanding the verdict, stated:

The problem with the quantum of evidence adduced by the Plaintiff is that it fails to do more than create a mere possibility that Kendall Eldred committed an assault upon the decedent which caused the decedent's death. The evidence of the Plaintiff produces only one of several possible theories as to the manner in which the death occurred. As noted in *State Farm Mutual Auto Insurance Co. vs. Anderson-Wever [Weber], Inc.* [252 Iowa 1289, 110 N.W.2d 449 (1961)], supra, the mere happening of an event (the death of the decedent in this case) without evidence as to the cause does not, necessarily, create a jury question. *See id.* at 1302, N.W.2d at 456. In this case, there is a substantial "missing link" which has not been supported by either circumstantial or direct evidence. That missing link is an evidentiary connection of Kendall Eldred with the incident which "caused" the death of the decedent. The most that can be concluded from the evidence submitted is that the Plaintiff's theory is a possible theory, anything beyond that conclusion must be the result of conjecture. The burden of

showing "cause" remains on the Plaintiff, and if he offers evidence from which reasonable minds could reach the conclusion on causation, the question (of causation) is for the jury. *See id.* Here, however, there is not one shred of evidence, much less a preponderance, from which reasonable minds could find sufficient support for the Plaintiff's theory that it was the Defendant that did commit the act which ultimately caused the death of the decedent. It is *evidence,* either direct or circumstantial, which supports a conclusion, not surmise or conjecture.

In *Blong v. Snyder,* 361 N.W.2d 312, 315 (Iowa App. 1984), we stated:

When reviewing an order granting a defendant's motion for judgment notwithstanding the verdict, we view the evidence in the light most favorable to the plaintiff. *Watson v. Lewis,* 272 N.W.2d 459, 461 (Iowa 1978). This is true regardless of whether such evidence is contradicted. *Schiltz v. Cullen-Schiltz & Associates, Inc.,* 228 N.W.2d 10, 17 (Iowa 1975). Every legitimate inference which can be reasonably made from the evidence is considered, and if reasonable minds can differ on the issue, it is for the jury to decide. *Id.*

Because plaintiff's case is necessarily based entirely upon circumstantial evidence, his burden of proof is held to "a more reasonably probable" standard.

By this we do not mean that the mere happening of the event without evidence as to the cause creates a jury question. The burden of showing cause is on the plaintiff, but if he offers evidence from which reasonable minds could reach a conclusion, the question is for the jury. In the instant case the parties offered conflicting theories, supported by circumstantial evidence and opinion testimony. In order to establish a proposition by circumstantial evidence, the evidence must be such as to make the claimant's theory reasonably probable, not merely possible, and more probable than any other theory based on the evidence; but the evidence need not exclude every other possible theory.

*State Farm Mut. Auto. Ins. Co., v. Anderson-Weber, Inc.,* 252 Iowa 1289, 1302, 110 N.W.2d 449, 456 (1961).

The trial court first determines whether the plaintiff has presented substantial evidence on each element of the claim to determine if a reasonable trier of fact could find for the plaintiff. *Poulsen v. Russell,* 300 N.W.2d 289, 296 (Iowa 1981). Defendant, in his brief states, "If there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable men in the exercise of impartial judgment might reach different conclusions, the motions should be denied and the case submitted to the jury."

In both quotes above, we conclude the key words in interpreting this standard, are "could," and "might". Therefore, in order for us to uphold the trial court's decision on this issue, we must concur that it was not reasonable to believe that the jury "could" or "might" interpret the evidence so as to decide defendant Eldred inflicted the fatal blow. Because we believe the facts, and the inferences reasonably derived therefrom, could, or might persuade impartial, reasonable jurors that defendant Eldred did inflict the fatal blow, we reverse the trial court's order granting the judgment notwithstanding the verdict.

Plaintiff had the burden of proving the following facts: (1) that plaintiff was fatally injured by a blow from some assailant; (2) that the assailant was Kendall Eldred; and (3) that the force used was not justified and was unreasonable and deadly. Since there was very little direct evidence available to plaintiff, virtually all of the evidence offered on these issues was circumstantial. From such evidence, the court initially submitted the case to the jury, which found those facts to be as alleged by plaintiff. Direct and circumstantial evidence are equally probative. Iowa R.App.P. 14(f)(16). Our task on review of the trial court's decision is to determine if reasonable minds can differ on the issues presented when viewing the evi-

dence, both direct and circumstantial, in the light most favorable to the plaintiff, and giving to plaintiff every legitimate inference which may reasonably be deduced therefrom. If we find that reasonable minds can differ on the issues presented under that test, then a jury question is generated and it is appropriate to submit the issues to the jury and the verdict should be upheld. *Dennett v. City of Des Moines*, 347 N.W.2d 691 (Iowa Ct.App. 1984). Judgment notwithstanding the verdict in defendant's favor is appropriate if there is no substantial evidence in support of one of the elements of plaintiff's claim. *Id.* at 692; *Valadez v. City of Des Moines*, 324 N.W.2d 475, 478 (Iowa 1982).

■ Although most of the evidence in this case is circumstantial, there are also certain facts which could assist the jury in determining whether Eldred was responsible for Thacker's death. From Thacker's arrival at the station at 1:04 a.m., until he was discovered at 1:24 a.m., he was only in Eldred's presence. Excepting for approximately seven minutes recorded by video camera in the processing room, and an unknown amount of time in the rest room, Eldred was the only person who knew the movements of Thacker until Thacker is alleged to have gotten away from him. At 1:18.16 a.m., according to the dispatcher's tape recording, Eldred hit what is referred to as the "panic button" and set off an alarm within the station. At 1:18.42 a.m., Eldred reported by radio, "Okay, he's in the building somewhere." At that time, the dispatcher testified that she saw Eldred on her closed circuit television screen, indicating that he was between the two doors on the south side of the station.

There is no testimony from any other officer to the effect that during the ensuing search, Eldred was seen. Eldred testified that when Thacker ran, he followed about one second behind him. From the record, the jury could find that Eldred knew where Thacker went, and followed him, contrary to Eldred's testimony.

Other direct evidence which could be considered concerned the injuries suffered by Thacker, his location in the north-south alley, the fact that Eldred was the first person to reach Thacker, and the condition of Thacker's body and clothes, including his shoes. The jury could consider, on the issue as to whether Thacker was assaulted, the fact that while the video tape showed Thacker's shirt buttoned, when he was found in the alley, several buttons were missing from his shirt. From the nature of the injury, his position in the alley, his clothes, his marks and bruises on his body in the area of both armpits, as well as the lack of broken bones or bruises on other parts of his body that might have resulted from a fall from a roof, the jury could conclude that Thacker's injuries resulted from an assault.

The jury would be justified in finding Eldred was the person who assaulted Thacker if it considered the available circumstantial evidence and especially the fact that Eldred was the last person with Thacker and was, in fact, in pursuit of him when he bolted. This finding would be further justified if the jury considered Thacker's location when he was found, Eldred's being first to him and calling for the ambulance, and the failure of anyone to confirm his whereabouts during the search. We believe that the circumstantial evidence, when considered with the direct evidence and the expert evidence received in this trial, would permit reasonable jurors to conclude that Thacker was injured and died as a result of unreasonable and deadly force inflicted by Kendall Eldred.

There is no agreement in the testimony of the various officers involved in the search as to where everyone was during the search. Therefore, no witness can conclusively establish credibility. The record of the radio transmission that was available to the jury at least gives the trier of fact a reliable time frame to work with. Using that time frame, a trier of fact could reasonably conclude that Eldred was not necessarily where others testified that he was, and in fact, could conclude that he could have been in the alley. It is the inability to satisfactorily account for (1) Eldred's

whereabouts from the time Thacker escaped to the time (2) Eldred was seen (on the monitor) by the dispatcher when he reported the escape, and then (3) to the time the ambulance was requested by Eldred, that creates a factual question as to where Eldred really was and what he was doing. Considering this inability to account for his whereabouts with the single fatal injury suffered by Thacker, there is little doubt that a trier of fact, giving every legitimate inference to the evidence, could differ on the issue of Eldred's culpability. The trier of fact could also determine that plaintiff's theory is reasonably probable and not merely possible. We cannot concur with the district court that it was not reasonable to believe that the jury "could" or "might" interpret the evidence in favor of plaintiff's theory of what happened that night in the alley.

We hold the district court erred in granting defendant's motion for judgment notwithstanding the verdict, and we reinstate the jury's verdict relating to defendant Eldred's liability for Kevin Thacker's death.

**II. Conditional New Trial.** The trial court also granted defendant's motion for a conditional new trial in case the judgment notwithstanding the verdict order is reversed. Both defendant and the trial court cite the applicable principles of law on this issue. This court, in *Yoch v. City of Cedar Rapids*, 353 N.W.2d 95, 99 (Iowa App. 1984), stated:

> The Iowa Supreme Court in *Householder v. Town of Clayton*, 221 N.W.2d 488, 493 (Iowa 1974), held that damages should be commensurate with the injury, and be sufficient to right the wrong done to the injured party.
>
> The test for adequacy is for the court to determine what will fairly and reasonably compensate an injured party for the injury sustained. ... a verdict will be set aside as inadequate where it appears clearly from uncontroverted evidence that the amount of the verdict bears no reasonable relationship to the loss suffered by the plaintiff. (citations omitted).

As stated in *Kaiser v. Stathas*, 263 N.W.2d 522, 523 (Iowa 1978):

> The applicable legal principles are well established in a long line of our cases. The assessment of damages is traditionally a jury function. Its decision should be disturbed only for the most compelling reasons. We will reduce or set aside a jury award only if it (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscious or sense of justice; or (3) raises a presumption that it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidentiary support. (Citations omitted). The most important of the above-enumerated tests is support in the evidence. If the verdict has support in the evidence, the others will hardly arise. If it lacks support, then they all arise. The real question in most cases, and here, is the amount and sufficiency of evidence to support the award made. For the verdict is within a reasonable range as indicated by the evidence we will not interfere what is primarily a jury question. (Citations omitted).

Defendant argues that these legal principles can and should be used to support the conclusion that the jury compromised on the issue of liability and therefore the new trial is appropriate. The trial court accepted this argument.

■ We disagree. We cannot understand how *Householder*, and *Yoch* can support defendant's argument. In those cases, as in the usual situation, it was the plaintiff who moved for a new trial because the damages received did not bear any relationship to the injuries received. Here the defendant attempts to tie the above judicial decisions with the language of Iowa R.Civ.P. 244, and thereby concludes that he is an "aggrieved" party. He then uses this status to attack the liability imposed upon him by the jury. We cannot agree with him or the trial court. The above legal principles usually are most appropriate in adjusting the damages for the aggrieved party. We are not convinced this argument is proper to attack the liability of the

aggrieved party. Indeed, if a new trial should be granted it would be only for the issue of damages because they may be considered inadequate in comparison to the damages suffered by the plaintiff. The punitive damages are not intended to compensate, and any arguments that the jury intended to use punitive damages just to compensate the plaintiff are themselves speculative and based on conjecture. The jury was properly instructed on these issues. The jury is presumed to have followed its instructions absent evidence to the contrary. *State v. Morrison,* 368 N.W.2d 173, 176 (Iowa 1985). Here there is no evidence of the jury failing to follow its directions on the issue of liability and punitive damages. There is also no evidence that the verdict is the result of passion, prejudice, or other ulterior motive. We, therefore, reverse the trial court's granting defendant a new trial in the event the judgment notwithstanding the verdict is reversed.

**III. 1983 Claim.** Plaintiff asks this court to remand this issue back to the trial court only if we determine a new trial would be necessary. Because we have reversed the trial court on the two prior issues in this opinion, a remand on this issue is not requested or ordered.

Because we hold the trial court erred in granting defendant's motion for a judgment notwithstanding the verdict, and in granting defendant a conditional new trial, we reverse and reinstate the verdict.

REVERSED; VERDICT REINSTATED.

DONIELSON, P.J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge (specially concurring).

I concur with the majority's opinion.

I find further support in the recent case of *Schermer v. Muller,* 380 N.W.2d 684 (Iowa 1986) for the majority's determination there is sufficient direct and circumstantial evidence to sustain the jury verdict. In *Schermer,* the court determined a negligence issue of defendant's failure to yield one-half the traveled way was not merely an ingenious theory of plaintiff's counsel but fact-based theories of sufficient probative force to support the plaintiff's claim of causative negligence against defendant. *Id.*

There was no direct evidence defendant was on the wrong side of the road. *Id.* The evidence came from circumstantial evidence because there was little direct evidence of what happened in the last few seconds before the vehicles collided. *Id.*

I find here fact-based theories sufficient to support plaintiff's claim.

I agree with the majority in reversing the order granting new trial. However, I have some question whether they have applied the proper standard of review in considering the trial court's conditional order granting a new trial. In ruling on a motion for new trial, broad but not unlimited discretion is vested in the trial court. We are slower to interfere with the grant of that relief than with its denial. However, the discretion so accorded must have some support in the record. *Hardy v. Britt-Tech Corp.,* 378 N.W.2d 307, 310 (Iowa App. 1985).

The trial court in essence determined because the jury award of compensatory damages was equal to the amount of the funeral and medical bills and the resulting verdicts were the result of misapprehension, passion, prejudice and a miscomprehension of liability and nothing more.

In *Hardy v. Britt-Tech Corp.,* 378 N.W.2d 307, 311 (Iowa App.1985), we held there was support for the trial court's determination that a verdict was influenced by passion and prejudice where a jury awarded a decedent's estate an amount only $2,644.74 in excess of funeral and medical expenses and determined the present worth of the support he would provide his family to be $1,725,000. However, *Hardy* is distinguishable. In *Hardy* we were comparing apples with apples (compensatory damages with compensatory damages), and because both measures of damages flowed from the same issue (the loss because of decedent's death), it was

fair to consider them together in considering the reasonableness of each.

In this case we have compensatory damages awarded in response to the following instruction:

### No. 20

The measure of damages for Kevin Thacker's death includes each of the following items, so far as shown by the evidence:

1. Present worth or value of the estate which Kevin Thacker would reasonably be expected to have saved and accumulated as a result of his own efforts from the date of his death if he had lived out the term of his natural life. This is not the sum which, when placed at interest, would yield an amount equal to the income of the decedent at the time of his death, but as heretofore stated, is that amount which estimated at its present worth under all the circumstances, as disclosed by the evidence, would have come to his estate from the date of his death to the end of his natural life. In estimating such damages, if any, you may and should consider the evidence on the expectancy of life of Kevin Thacker, his health and physical condition, his age and occupation at the time of his death, his education, his ability to earn money, the amount of taxes, both state and federal, which would be payable out of his earnings, his habits as to industry, thrift and economy, the contingencies of life, such as ill health, unemployment, increase or diminution of earning capacity as age advance, and all other facts and circumstances in the evidence tending to show *the amount, if any, that his estate might have accumulated* if he had not met death in the incident involved in this case. (emphasis supplied).

2. The fair and reasonable value of medical and ambulance expenses incurred as a result of the accident, but not to exceed $11,310.43, as shown by the evidence.

3. An award of interest on the reasonable funeral expenses of decedent for such time as they were prematurely incurred.

The jury was instructed as follows on punitive damages:

### No. 25

The plaintiff in the Petition has asked to recover over and above his actual damages what is known in law as exemplary damages. You are instructed that the law of this State permits but does not require a jury to allow exemplary damages in certain cases if it is found by the jury that the act of the defendant is the result of actual malice or recklessness. By recklessness, as this term is used in this case, is meant something more than negligence, but is meant that an act is done in such a manner and under such circumstances as to show heedlessness and an utter disregard and abandon as to what result may flow from the doing of an act or from the manner in which it is done.

By actual malice as the term is used in this case is that which is established by proof of spite, hatred, ill-will, or an evil, wicked or unlawful purpose or by proof of a deliberate or fixed intent to do injury.

Exemplary damages are not compensatory in the ordinary sense, but are allowed by way of punishment to restrain the defendant and others from the commission of like acts in the future.

So in this case if you find from the evidence that the defendant Kendall Eldred without justification struck Kevin Thacker in the head, and that such conduct was a result of actual malice or recklessness as those terms are defined herein, you may allow to the plaintiff exemplary damages in addition to his actual damages as explained to you in the preceding paragraph.

In determining the amount of exemplary damages, if any, to be awarded the plaintiff, the Court can give you no exact rule, but you should be guided by your careful and well considered judgment and allow, if any, such an amount such only as you shall find the plaintiff enti-

tled to receive in addition to his actual damages under all the facts and circumstances as shown by the evidence and under these instructions.

In no event may you allow the plaintiff as exemplary damages more than $2,000,000.00, being the amount asked for in his Petition, nor may you allow any exemplary damages unless you find by a preponderance of the evidence that the defendant's conduct was a result of actual malice or recklessness, as those terms are herein defined.

The punitive damages are not to compensate; they are, as the majority states, to punish. The jury could well have determined decedent would not have accumulated anything during his lifetime and still elected to punish defendant for his action. I, like the majority, find no basis for the trial court's ruling and would find the trial court abused its discretion in ordering a new trial.