**IN THE COURT OF APPEALS OF IOWA**

No. 22-1670
Filed June 21, 2023

**BENJAMIN J. SILVER and DANIELLE M. SILVER,**
    Plaintiffs-Appellants,

**vs.**

**BRET BARNER, BARNER REALTY, HELEN L. ROYER and KEVIN ROYER,**
    Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Jones County, Paul D. Miller, Judge.


        Benjamin and Danielle Silver appeal the district court's summary judgment ruling in favor of the defendants. **AFFIRMED.**


        Anne K. Wilson of Trent Law Firm, PLLC, Cedar Falls, for appellants.

        Thomas B. Read of Read & Roemerman, Cedar Rapids, for appellees Bret Barner and Barner Realty.

        Patrick L. Woodward and Nicholas J. Huffmon of McDonald & Woodward, P.C., Davenport, for appellees Helen L. Royer and Kevin Royer.


        Considered by Vaitheswaran, P.J., and Ahlers and Badding, JJ.

**VAITHESWARAN, Presiding Judge.**

Helen and Kevin Royer retained Bret Barner and his real estate agency, Barner Realty, to sell a piece of property Helen purchased from a family trust. Barner told Benjamin and Danielle Silver about the property. The Silvers purchased it, with Barner serving as agent for both sides.

The summer after the purchase, the Silvers found snakes in the house and discovered other problems. They sued the Royers, Barner, and his company. The Silvers alleged Barner "pre-filled" the purchase agreement, checking the box that waived inspections of the property. They further alleged the Royers were required to "provide a true and accurate [s]eller's [d]isclosure [s]tatement," and they failed to properly disclose (1) pest infestations and the effect on the value or desirability of the property; (2) the fact that the property was in the federal Conservation Reserve Program, which prevented them "from doing anything agriculture related on the property until it came out of CRP"; (3) "further information regarding the location of [septic] tanks" on the property; (4) the presence of abandoned cisterns; (5) multiple electrical problems affecting the property's insurability; and (6) debris left on the property. They also alleged that neither the Royers nor Barner and his company provided a copy of an easement agreement. The Silvers claimed the defendants violated their rights under the real estate disclosure statute and made fraudulent misrepresentations.

The defendants moved for summary judgment. The Silvers resisted. The district court granted the motions and denied a motion to reconsider. This appeal followed.

"A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Venckus v. City of Iowa City*, ___ N.W.2d ___, ___, 2023 WL 3555505, at *6 (Iowa 2023) (internal quotations and citation omitted); *accord Schermer v. Muller*, 380 N.W.2d 684, 687 (Iowa 1986)("[W]e must ascertain whether the full summary judgment record discloses genuine issues of fact for trial."). The Silvers argue "there were legitimate questions of fact that should have been determined at trial." Our review is on error. *Venckus*, 2023 WL 355505 at *5.

A seller of real estate is required "to provide a written disclosure statement to a potential buyer." *See Putman v. Walther*, 973 N.W.2d 857, 863 (Iowa 2022). The disclosure must include "information relating to the condition and important characteristics of the property and structures located on the property." *Id.* (citing Iowa Code § 558A.4(1)(a) (2022)). A person who violates the chapter is liable for actual damages, but "[t]he transferor, or a broker or salesperson . . . shall not be liable . . . unless that person has actual knowledge of the inaccuracy, or fails to exercise ordinary care in obtaining the information." *Id.* § 558A.6(1).

Fraudulent misrepresentation requires proof of "(1) [r]epresentation; (2) [f]alsity; (3) [m]ateriality; (4) [s]cienter; (5) [i]ntent to deceive; (6) [r]eliance; and (7) [r]esulting injury and damage." *Arthur v. Brick*, 565 N.W.2d 623, 625 (Iowa Ct. App. 1997) (quoting *Robinson v. Perpetual Serv. Corp.*, 412 N.W.2d 562, 565 (Iowa 1987)). "[F]or a buyer to prevail upon a claim based on misrepresentation" in this context, "not only must the seven elements of fraudulent misrepresentation

be met, but they are measured in conjunction with the standards for disclosure as required by section 558A." *Id.* at 626.

The Silvers waived inspection of the property. They acknowledge the waiver but contend "Barner, acting as their agent, told them not to inspect the property," and the statement is "material to [their] claims of fraudulent misrepresentation." The district court rejected the argument on the ground that the Silvers signed the document. The summary judgment record supports the court's determination. Indeed, the Silvers admitted they executed the document freely and voluntarily, and Benjamin Silver admitted he inspected the property and "[k]inda" made a punch list of things they could use as a bargaining chip. In light of these statements, we discern no fact issue on the waiver-of-inspection claim.

The Silvers next contend Barner told them they could not obtain a home warranty, given the age of the home. They claim they were ready to refute the representation with evidence from another realtor. The Silvers did not designate the realtor as an expert. *See Putman*, 973 N.W.2d at 864 (discussing the failure to designate an expert and whether an expert was needed on non-disclosure and damage questions). And, even if they deemed her a lay witness, they failed to submit an affidavit or deposition transcript in resistance to the summary judgment motion.[1] The district court did not err in declining to find a genuine issue of material fact. *See Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 5 (Iowa 2008).

---

[1] Barner points out that a one-page document purporting to be a market analysis prepared by the witness is not a market analysis and is outside the summary judgment record. We agree on both counts.

We turn to the Silvers' contention that they did not receive a copy of an easement agreement affecting the property. The Silvers concede the Royers advised them of the easement but argue the agreement would have helped them understand its import. Helen Royer explained its import. She answered "Yes" to the question whether there was an easement and she included a handwritten comment stating the "[e]asement [a]greement [was] on [the] driveway/lane for adjoining landowners." The comment clarified the nature and purpose of the easement. Because the Silvers were made aware of the easement details, the defendants' failure to give them the agreement did not amount to a disclosure violation.

In the same vein, the Silvers argue that, while the Royers informed them the property was "subject to CRP," they were not told the program precluded them from using the property for agricultural purposes for several months. Their admission that they knew about the Conservation Reserve Program before the house was purchased undermines their argument. In addition, Benjamin Silver acknowledged that he received the CRP payment for 2019 and agreed he was not "making any claim of any damages because the property was in the Conservation Reserve Program." In light of these concessions, the Silvers' apparent lack of knowledge regarding their ability to use the land for agricultural purposes did not preclude a grant of summary judgment.

The Silvers next contend they were not informed that a second septic system designed to service a "big building" on the property was inoperable. Kevin Royer countered that he was unaware of a septic tank behind the big building or cisterns on the property. Although he admitted authorizing construction

of the building, he testified his wife had not lived on the property since 1987 and neither of them were allowed on the property from 2012 until after the 2018 death of Helen's mother. Their lengthy absence from the premises supports their contention that they did not know the tank was inoperable.

The Silvers also argue the disclosure form "indicated that there was no junk left behind on the property," when there was in fact "a significant amount of junk left behind." While the Silvers assert "it would be illogical for anyone who walked the property to view the existence of the junk," Danielle Silver admitted she was aware of the junk before they offered to purchase the property and they discussed it with Barner. Danielle was asked whether she made removal of the junk a condition of the purchase. She responded, "No." There was no issue of material fact precluding summary judgment on this issue.

We are left with the Silvers' assertion that the Royers failed to disclose a snake infestation on the property. Specifically, the Royers answered "[n]o" to the questions, "Are there any active or inactive structural pest infestations?" and "Is there anything else which would adversely affect the value or desirability of the property?" But, as noted, they were not present on the property for years.

The Silvers attempted to generate a fact issue on the Royers' knowledge of the presence of snakes with affidavits from Helen Royer's brother. He stated "there were always snakes on the property." He further attested he saw a snake "climbing up the wall in the basement" after his mother passed away. While he later clarified "[t]he snake was particularly small and not at all frightening," he attributed knowledge of the snakes to Helen Royer in both affidavits, stating she

"was at the property much more than [he] was" and he was "sure that she knew that there were snakes on the property."

These affidavits might have generated a fact issue on Helen's knowledge of snakes on the property but for Helen's own testimony. She stated that, in the five or six times she cleaned the home prior to its sale, she never saw snakes or snake skins. When asked, "Did you have any knowledge of any snakes being in your mother's house . . . before the closing?" she responded, "No." She further testified to seeing no snakes outside the house after 2013. Before then, she said she might have seen a garter snake or "something like that, something that would be typical of a rural farm place that's next to a quarry, that's next to a river, that's next to limestone." She continued, "[O]therwise no, never any in the house ever growing up." Helen's deposition testimony refutes her brother's suggestion that she knew about snakes. More to the point, the question on the disclosure statement related to "pest infestations" and Helen reasonably could have surmised from her personal experience that there was no "infestation" of snakes on the property. *Cf. Robinson v. Welp*, No. 17-1801, 2019 WL 2879933, at *5 (Iowa Ct. App. July 3, 2019) (citing the defendants' "extensive efforts to minimize the snakes in the yard and the food supply of the snakes in and around their home" and concluding "checking 'no' to the question asking, 'Is there a problem with . . . snakes?' was a violation of their duty."). As for the Silvers' remaining arguments in support of a finding that the Royers had actual knowledge of a snake infestation, they failed to present more than speculative evidence in support of those arguments. *See Cemen Tech*, 753 N.W.2d at 5 ("Speculation is insufficient to create a genuine issue of material fact.").

We conclude the district court did not err in granting the defendants' motions for summary judgment.

**AFFIRMED.**